(No. 32076.—

CECIL R. OZIER *et al.*, Appellants, *vs.* GEORGE HAINES, Appellee.

*Opinion filed January 24, 1952.*

John Alan Appleman, of Urbana, for appellants.

Robert P. Shonkwiler, of Monticello, for appellee.

Mr. Chief Justice Daily delivered the opinion of the court:

Plaintiffs, the operators of a grain elevator, brought this suit in the circuit court of Piatt County to recover $4450 damages which allegedly resulted when the defendant, George Haines, breached an oral contract whereby he sold 5000 bushels of corn to plaintiffs. Defendant filed a motion to dismiss the complaint, setting up the Statute of Frauds as a defense. The trial court allowed the motion

and when plaintiffs elected to stand by their pleading, final judgment was entered for defendant. An appeal followed in which the judgment of the trial court was affirmed by the Appellate Court. (343 Ill. App. 400.) The latter court has granted plaintiffs' petition for leave to appeal to this court, certifying that important questions of law are involved in the cause.

In substance, the complaint alleged that defendant came to plaintiffs' elevator on February 11, 1947, and verbally sold them 5000 bushels of corn at $1.24 per bushel; that relying on said contract of sale, plaintiffs immediately resold the corn to a broker in Decatur, by telephone, while defendant was still in their offices, and that defendant knew the grain had been resold in reliance upon his agreement, thereby estopping him to defend against his acts, representations and contract. The complaint further alleged that it was the custom of the trade, and of plaintiffs' elevator, to buy and sell grain upon verbal contracts, and for the purchasing elevator, immediately upon the verbal sale being made, to resell to a grain broker, which customs were well known to all the parties here and relied upon by them. The complaint continued that defendant thereafter refused to deliver the corn, making it necessary for plaintiffs to purchase corn on the open market, at a higher price, to fulfill their obligation to the broker, and necessitating this suit to recover $4450, the difference in price at which corn was purchased on the open market and the price at which defendant had agreed to sell to plaintiffs.

The defendant's position is that the oral contract is unenforcible because of the Statute of Frauds, (Ill. Rev. Stat. 1945, chap. 121½, par. 4,) pertaining to sales of personal property valued in excess of $500. Plaintiffs counter that the doctrine of equitable estoppel prevents defendant from relying on such a defense and, in addition, that the effect of existing trade customs, known to the parties, is to create an enforcible contract despite the

Statute of Frauds. The Appellate Court found that there were insufficient grounds upon which the doctrine of equitable estoppel could be invoked, and that custom could not render the statute nugatory.

The proposition that one may be estopped to assert the Statute of Frauds as a defense is not a new one, and has been invoked by this court where the facts presented have warranted its application. (*Cross* v. *Weare Commission Co.* 153 Ill. 499; *Gladville* v. *McDole,* 247 Ill. 34; *Barnett* v. *Meisterling,* 327 Ill. 564; *National Importing and Trading Co.* v. *Bear & Co.* 324 Ill. 346.) The result is reached to avoid the inequity of allowing one to utilize the statute to work an injustice or fraud, or to permit one to take advantage of his own wrong. However, the moral wrong of refusing to be bound by an agreement because it does not comply with the Statute of Frauds, does not of itself authorize the application of the doctrine of estoppel, for the breach of a promise which the law does not regard as binding is not a fraud. (*Kelly* v. *Fischer,* 263 Ill. 184.) To hold otherwise would be to render the statute entirely nugatory. *Uden* v. *Patterson,* 252 Ill. 335.

In the case of *Lowenberg* v. *Booth,* 330 Ill. 548, it is stated that six elements must appear in order to invoke the doctrine of equitable estoppel: "(1) Words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is alleged must have knowledge, either actual or implied, at the time the representations were made, that they were untrue; (3) the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made and at the time they were acted on by him; (4) the party estopped must intend or expect that his conduct or representations will be acted on by the party asserting the estoppel or by the public generally; (5) the representations or conduct must have been

relied and acted on by the party claiming the benefit of the estoppel; and (6) the party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party is permitted to deny the truth thereof." The Appellate Court denied relief to plaintiffs in this cause because of the nonexistence of the first element, namely, words or conduct amounting to the misrepresentation or concealment of existing facts.

Plaintiffs attack the *Lowenberg case* in many different ways, but the substance of all their argument is that the rule therein set forth is too technical and too general and that its effect is to unduly restrict the application of the doctrine of estoppel. In particular they assail the necessity for the existence of the first element, namely, some word or act by the party against whom the estoppel is alleged, amounting to a misrepresentation or concealment of material facts, in cases where the estoppel is sought to be invoked against one who defends on the ground of the Statute of Frauds. They insist that the doctrine of estoppel has developed to the extent that it is archaic to require this element, and that the only elements necessary, in a case such as this, are an act or statement upon which another relies and prejudice resulting from a change of position brought about by such reliance. What they urge is a softer application of the Statute of Frauds, in order to prevent the loss from falling upon what they describe as the more innocent of the two parties to the oral contract, and, in effect, their position is that the promisee's reliance upon an unenforcible promise will validate the promise. To adopt such a view would render the Statute of Frauds useless and unmeaning. It is true that harsh results, or moral fraud as plaintiffs choose to term it, may occur where one has changed his position in reliance on the oral promise of another, but it is a result which is invited and risked when the agreement is not reduced to

writing in the manner prescribed by law. The present case is a patent example, for although the parties were in each other's presence and in a business office, no attempt was made to reduce their agreement to the simplest writing.

The doctrine of equitable estoppel and that of the Statute of Frauds have developed side by side in the law, each for the ultimate purpose of preventing fraud and injustice. Despite this, as one, writer points out, the one may be a modification and regulation of the other. We believe, however, that each doctrine must be given a field of operation and that neither should be allowed to completely efface the other. To withdraw the first element of the *Lowenberg case* where equitable estoppel is urged against one asserting the Statute of Frauds, as plaintiffs urge, would allow either party to circumvent the Statute of Frauds at will. It is true that a fraudulent intention or purpose is not essential to the doctrine of estoppel, but in cases involving oral contracts the estoppel must be based on misrepresentation or concealment if the Statute of Frauds is to be given effect at all. That is the point of counterbalance between the two doctrines and the factor for determining which shall apply. When the parties here entered the disputed oral contract, each knew, or is deemed to have known, that they had entered into an unenforcible agreement. Both had all knowledge in reference to the transaction and neither side had information that the other did not have. What either side did thereafter in reference to the subject matter would not take their agreement out of the Statute of Frauds, unless they were induced to take the action by some misrepresentation or fraud of the other. In the absence of fraud or misrepresentation, the party changing his position must be said to have acted solely upon his own judgment and at his own risk, and he is not entitled to an application of the estoppel doctrine.

Plaintiffs further contend that if the defendant heard plaintiffs' manager telephone the broker and resell the corn,

he was guilty of a fraudulent act when he did not then state that he had no intention to perform his agreement. Such speculation need not be answered in this opinion, for the facts pleaded do not attribute such knowledge to defendant. The complaint states only that the corn was resold to the broker over the telephone while defendant was still in plaintiffs' "offices." It is next contended that defendant's knowledge of the customs of the trade, admitted by his pleading, make him guilty of a wrongdoing in not keeping his oral agreement, sufficient to form a basis for the application of the doctrine of equitable estoppel. The customs of trade relied upon are first, the custom of buying and selling grain by oral contract, and second, the custom of the purchasing elevator to resell the grain rather than to hold it for speculative purposes. While there are many instances where custom and usage have been used to interpret an enforcible contract, we know of no case, and none has been brought to our attention, where custom and usage have been held to create an enforcible contract. Further, the rule as to judicial notice of custom and usage is succinctly stated in 23 C.J. (Evidence, sec. 1858,) 76, as follows: "The courts will take judicial notice of general customs and usages provided the same are legal and otherwise possess the requisites necessary to their recognition and application by the court. Conversely courts will not take judicial notice of a custom * * * which contravenes an established rule of law, * * *." We conclude, as the Appellate Court did, that the customs pleaded could not render nugatory the provision of the Statute of Frauds.

Plaintiffs point to the many businesses in which similar customs prevail and state that if the practices are to be changed, this court should expressly so declare. Again, they state that it would be unfortunate if the practices and customs were modified suddenly by a decision of this court. No decision by this court is necessary or can be forthcoming on the issue raised, for the legislature has already

prescribed the manner in which such sales should be consummated if they are to become enforcible in the eyes of the law. This court has no authority to give license to a custom or usage which is outside the methods established by rule of law. We can only say that those who pursue other methods operate at their risk, and if the enforcement of the law creates a peril to our business structure, the remedy lies with the legislature, not with the courts.

In conclusion, plaintiffs urge that title to the corn passed to them on February 11, 1947, and that defendant's delivery elsewhere constituted a conversion. In view of our conclusion that the Statute of Frauds was not satisfied there can be no merit to this contention. In addition, it is our further conclusion that plaintiffs' complaint does not support such a theory.

The judgment of the Appellate Court for the Third District is affirmed.

*Judgment affirmed.*