# DENNIS McINERNEY, Appellant, v. CHARTER GOLF, INC., Appellee.

*Opinion filed May 22, 1997.*

NICKELS, J., joined by MILLER and McMORROW, JJ., dissenting.

Allen S. Gerrard, of Chicago (Robert P. Sheridan, of counsel), for appellant.

F. Thomas Hecht and David B. Goroff, of Hopkins & Sutter, of Chicago, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Is an employee's promise to forgo another job opportunity in exchange for a guarantee of lifetime employment sufficient consideration to modify an existing employment-at-will relationship? If "yes," must such an agreement be in writing to satisfy the requirements of the statute of frauds? These questions, among others, must be answered in plaintiff Dennis McInerney's appeal from an order of the appellate court affirming a grant of summary judgment in favor of the defendant,

Charter Golf, Inc. Although we conclude that a promise for a promise is sufficient consideration to modify a contract—even an employment contract—we further conclude that the statute of frauds requires that a contract for lifetime employment be in writing.

The facts are uncomplicated. This case comes to us on a grant of summary judgment, so our review is *de novo* (*Barnett v. Zion Park District*, 171 Ill. 2d 378, 385 (1996)), and we will consider "the pleadings, depositions, and admissions on file, together with the affidavits, if any," to determine whether a genuine issue of material fact exists (735 ILCS 5/2—1005(c) (West 1994)). From 1988 through 1992, Dennis McInerney worked as a sales representative for Charter Golf, Inc., a company which manufactures and sells golf apparel and supplies. Initially, McInerney's territory included Illinois but was later expanded to include Indiana and Wisconsin. In 1989, McInerney allegedly was offered a position as an exclusive sales representative for Hickey-Freeman, an elite clothier which manufactured a competing line of golf apparel. Hickey-Freeman purportedly offered McInerney an 8% commission.

Intending to inform Charter Golf of his decision to accept the Hickey-Freeman offer of employment, McInerney called Jerry Montiel, Charter Golf's president. Montiel wanted McInerney to continue to work for Charter Golf and urged McInerney to turn down the Hickey-Freeman offer. Montiel promised to guarantee McInerney a 10% commission on sales in Illinois and Wisconsin "for the remainder of his life," in a position where he would be subject to discharge only for dishonesty or disability. McInerney allegedly accepted Charter Golf's offer and, in exchange for the guarantee of lifetime employment, gave up the Hickey-Freeman offer. McInerney then continued to work for Charter Golf.

In 1992, the relationship between Charter Golf and

McInerney soured: Charter Golf fired McInerney. McInerney then filed a complaint in the circuit court of Cook County, alleging breach of contract. The trial court granted Charter Golf's motion for summary judgment after concluding that the alleged oral contract was unenforceable under the statute of frauds because the contract amounted to an agreement which could not be performed within a year from its making. The appellate court affirmed, but on a wholly different ground. No. 1—94—1764 (unpublished order under Supreme Court Rule 23). The appellate court held that the putative contract between McInerney and Charter Golf suffered from a more fundamental flaw, namely, that no contract for lifetime employment even existed because a promise to forbear another job opportunity was insufficient consideration to convert an existing employment-at-will relationship into a contract for lifetime employment.

This court accepted McInerney's petition for leave to appeal (155 Ill. 2d R. 315), and for the reasons set forth below, we affirm on other grounds.

## ANALYSIS

Employment contracts in Illinois are presumed to be at-will and are terminable by either party; this rule, of course, is one of construction which may be overcome by showing that the parties agreed otherwise. *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 489 (1987). As with any contract, the terms of an employment contract must be clear and definite (*Duldulao*, 115 Ill. 2d at 490) and the contract must be supported by consideration (*Ladesic v. Servomation Corp.*, 140 Ill. App. 3d 489, 491 (1986); *Martin v. Federal Life Insurance Co.*, 109 Ill. App. 3d 596, 602 (1982); *Heuvelman v. Triplett Electrical Instrument Co.*, 23 Ill. App. 2d 231, 235 (1959)).

### A. Consideration

Although the rules of contract law are well-

established and straightforward, a conflict has emerged in the appellate court decisions on the subject of consideration in the context of a lifetime employment contract. Several decisions have held that a promise of lifetime employment, which by its terms purports to alter an employment-at-will contract, must be supported by "additional" consideration beyond the standard employment duties. *Heuvelman*, 23 Ill. App. 2d at 235-36; *Koch v. Illinois Power Co.*, 175 Ill. App. 3d 248, 252 (1988); *Ladesic*, 140 Ill. App. 3d at 492-93. These cases have held that an employee's rejecting an outside job offer in exchange for a promised guarantee of lifetime employment is not sufficient consideration to alter an employment-at-will relationship. *Heuvelman*, 23 Ill. App. 2d at 236; *Koch,* 175 Ill. App. 3d at 252; *Ladesic*, 140 Ill. App. 3d at 492-93. The premise underlying these cases is that the employee simply weighs the benefits of the two positions, and by accepting one offer the employee necessarily rejects the other. As such, these cases have reasoned that the employee has not given up anything of value, and thus there is no consideration to support the promise of lifetime employment. *Koch*, 175 Ill. App. 3d at 252; *Ladesic*, 140 Ill. App. 3d at 492-93.

One case, however, has taken issue with this analysis. In *Martin v. Federal Life Insurance Co.*, the appellate court held that an enforceable contract for lifetime employment was formed when an employee relinquished a job offer in exchange for a promise of permanent employment from his current employer. *Martin v. Federal Life Insurance Co.*, 109 Ill. App. 3d 596, 601 (1982). The *Martin* court recognized that there was consideration in an exchange of promises: the employer promised to give up his right to terminate the employee at-will, and in exchange the employee agreed to continue working for his current employer and to forgo a lucrative opportunity with a competitor. *Martin*, 109 Ill. App. 3d at 601.

What is consideration? Under the prevailing view, embodied in the Restatement (Second) of Contracts, consideration is the bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance. Restatement (Second) of Contracts § 71 (1981). Thus, a promise for a promise is, without more, enforceable. Restatement (Second) of Contracts § 79, Comment *a*, at 200 (1981). In past cases, this court has recognized this basic precept, *i.e.*, mutual assent and an exchange of promises provides consideration to support the formation of a contract. See, *e.g.*, *Patton v. Carbondale Clinic*, 161 Ill. 2d 357, 372 (1994); *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320 (1977) (holding that any act or promise which is of benefit to one party or disadvantage to the other is sufficient "consideration" to support a contract).

While this court has never directly addressed the specific requirements to establish a permanent employment contract, it has held more generally that the employment relationship is governed by the law of contract. Existence of an employment contract, express or implied, is essential to the employer-employee relationship. *A.J. Johnson Paving Co. v. Industrial Comm'n*, 82 Ill. 2d 341, 350 (1980). As with any contract, it is not possible for a contract of employment to exist without consent of the parties. *M&E Electric Co. v. Industrial Comm'n*, 57 Ill. 2d 113, 119 (1974). Indeed, this court held in *Duldulao*, 115 Ill. 2d at 490, that an employee handbook or other policy statement creates enforceable contractual rights governed by the traditional requirements for contract formation.

In the instant case, Charter Golf argues that an employee's promise to forgo another employment offer in exchange for an employer's promise of lifetime employment is not sufficient consideration. But why not? The defendant has failed to articulate any principled

reason why this court should depart from traditional notions of contract law in deciding this case. While we recognize that some cases have indeed held that such an exchange is "inadequate" or "insufficient" consideration to modify an employment-at-will relationship, we believe that those cases have confused the conceptual element of consideration with more practical problems of proof. As we discussed above, this court has held that a promise for a promise constitutes consideration to support the existence of a contract. To hold otherwise in the instant case would ignore the economic realities underlying the case. Here McInerney gave up a lucrative job offer in exchange for a guarantee of lifetime employment; and in exchange for giving up its right to terminate McInerney at will, Charter Golf retained a valued employee. Clearly both parties exchanged bargained-for benefits in what appears to be a near textbook illustration of consideration.

Of course, not every relinquishment of a job offer will necessarily constitute consideration to support a contract. On the related issue of mutuality of obligation, Charter Golf complains that McInerney's promise to continue working was somehow illusory, because it alleges that McInerney had the power to terminate the employment relationship at his discretion while it lacked any corresponding right. The court's decision in *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 108 (1922), teaches that "where there is any other consideration for the contract mutuality of obligation is not essential." Charter Golf's argument on this point fails because McInerney continued working for Charter Golf *and* relinquished his right to accept another job opportunity. When, as here, the employee relinquishes something of value in a bargained-for exchange for the employer's guarantee of permanent employment, a contract is formed.

## B. Statute of Frauds

So there is a contract, but should we enforce it? Charter Golf argues that the oral contract at issue in this case violates the statute of frauds and is unenforceable because it is not capable of being performed within one year of its making. By statute in Illinois, "[n]o action shall be brought *** upon any agreement that is not to be performed within the space of one year from the making thereof, unless *** in writing and signed by the party to be charged." 740 ILCS 80/1 (West 1994). Our statute tracks the language of the original English Statute of Frauds and Perjuries. 29 Charles II ch. 3 (1676). The English statute enacted by Parliament had as its stated purpose the prohibition of those "many fraudulent practices, which are commonly endeavored to be upheld by perjury and subordination of perjury." 29 Charles II ch. 3, introductory clause (1676). Illinois' statute of frauds seeks to do the same by barring actions based upon nothing more than loose verbal statements.

The period of one year, although arbitrary, recognizes that with the passage of time evidence becomes stale and memories fade. The statute proceeds from the legislature's sound conclusion that while the technical elements of a contract may exist, certain contracts should not be enforced absent a writing. It functions more as an evidentiary safeguard than as a substantive rule of contract. As such, the statute exists to protect not just the parties to a contract, but also—perhaps more importantly—to protect the fact finder from charlatans, perjurers and the problems of proof accompanying oral contracts.

There are, of course, exceptions to the statute of frauds' writing requirement which permit the enforcement of certain oral contracts required by the statute to be in writing. One such exception is the judicially created exclusion for contracts of uncertain duration. In an effort to significantly narrow the application of the stat-

ute, many courts have construed the words "not to be performed" to mean "not capable of being performed" within one year. See Restatement (Second) of Contracts § 130 (1981). These cases hold that if performance is possible by its terms within one year, the contract is not within the statute regardless of how unlikely it is that it will actually be performed within one year. Under this interpretation, the actual course of subsequent events and the expectations of the parties are entirely irrelevant. Restatement (Second) of Contracts § 130, Comment *a* (1981). A contract for lifetime employment would then be excluded from the operation of the statute because the employee could, in theory, die within one year, and thus the contract would be "capable of being performed."[1]

We find such an interpretation hollow and unpersuasive. A "lifetime" employment contract is, in essence, a permanent employment contract. Inherently, it anticipates a relationship of long duration—certainly longer than one year. In the context of an employment-for-life contract, we believe that the better view is to

---

[1]In attempting to rein in this exception to the statute of frauds, some courts have made a distinction—at times quite attenuated—between death as full performance and death operating to terminate or excuse the contract. See, *e.g.*, *Sinclair v. Sullivan Chevrolet Co.*, 45 Ill. App. 2d 10, 15 (1964); *Martin*, 109 Ill. App. 3d 596; *Gilliland v. Allstate Insurance Co.*, 69 Ill. App. 3d 630 (1979). Under this view, an oral contract for employment for a stated period longer than one year will not be enforced because, although the employee could die within one year of the making of the contact, these courts elect to treat that contingency as an excuse or termination of the contract and not as performance. This distinction, while perhaps logical in other contexts, is meaningless in our case where the complete performance contemplated by the parties, *i.e.*, employment for life, is identical to the event giving rise to termination or excuse. Under the terms of the oral contract alleged in this case, the employee's death would have resulted in full performance.

treat the contract as one "not to be performed within the space of one year from the making thereof." To hold otherwise would eviscerate the policy underlying the statute of frauds and would invite confusion, uncertainty and outright fraud. Accordingly, we hold that a writing is required for the fair enforcement of lifetime employment contracts.

The plaintiff argues that the statute of frauds' writing requirement is nonetheless excused because he performed, either fully or partially, according to the terms of the oral contract. Illinois courts have held that a party who has fully performed an oral contract within the one-year provision may nonetheless have the contract enforced. *American College of Surgeons v. Lumbermens Mutual Casualty Co.*, 142 Ill. App. 3d 680, 700 (1986); *Meyer v. Logue*, 100 Ill. App. 3d 1039, 1043 (1981); *Noesges v. Servicemaster Co.*, 233 Ill. App. 3d 158, 163 (1992). Full or complete performance of the instant contract, by its terms, would have required the plaintiff to work until his death, but our plaintiff lives.

A party's partial performance generally does not bar application of the statute of frauds, unless it would otherwise be "impossible or impractical to place the parties in status quo or restore or compensate" the performing party for the value of his performance. *Mapes v. Kalva Corp.*, 68 Ill. App. 3d 362, 368 (1979); see also *Payne v. Mill Race Inn*, 152 Ill. App. 3d 269, 278 (1987). This so-called exception resembles the doctrines of restitution, estoppel and fraud, and exists to avoid a "virtual fraud" from being perpetrated on the performing party. *Barrett v. Geisinger*, 148 Ill. 98 (1898); see also Restatement (Second) of Contracts § 130, Comment *e* (1981). In any event, our plaintiff has been fully compensated for the work that he performed. Accordingly, part performance—on these facts—will not take the case out of the statute of frauds.

Finally, the plaintiff argues that the defendant should be estopped from asserting the defense of statute of frauds. Traditionally, a party's reliance estopped the other party from asserting the statute only under the doctrine of equitable estoppel. *Ozier v. Haines*, 411 Ill. 160, 163-65 (1952); *Sinclair v. Sullivan Chevrolet Co.*, 45 Ill. App. 2d 10, 17-19 (1964), *aff'd*, 31 Ill. 2d 507 (1964). Equitable estoppel is available if one party has relied upon another party's misrepresentation or concealment of a material fact. Absent such misrepresentation or fraud, the defense is not available. *Ozier*, 411 Ill. at 165; *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.*, 114 Ill. 2d 133, 148 (1986). No misrepresentation has been alleged here.

Rather, the plaintiff complains that he relied upon the oral promises of his employer and makes much of the injustice done him—indeed, too much. While agreeing to work for an employer and giving up other employment opportunities can clearly be described as reliance on the employer's oral promises concerning the terms of employment, promissory estoppel does not bar the application of the statute of frauds in Illinois. See *Ozier*, 411 Ill. 160; *Sinclair*, 31 Ill. 2d 507 (rejecting, at least implicitly, the suggestion that promissory estoppel bars the application of the statute of frauds). In the context of an employment relationship, reasonable reliance is insufficient to bar the application of the statute of frauds. Some authorities—reflected in the view of the Second Restatement—have used promissory estoppel to bar the application of the statute of frauds in a narrow class of cases in which a performing party would otherwise be without an adequate remedy and there is some element of unjust enrichment. Restatement (Second) of Contracts § 139, Comment *c*, at 355-56 (1981). We do not believe that this case is one which requires us to adopt such a rule. As we have observed, McIner-

ney has been compensated for his services, and the sole injustice of which he complains is his employer's failure to honor its promise of lifetime employment. Our plaintiff, however, is a salesman—a sophisticated man of commerce—and arguably should have realized that his employer's oral promise was unenforceable under the statute of frauds and that his reliance on that promise was misplaced. Our parties entered into this disputed oral contract freely and without any hint of coercion, fraud or misrepresentation, and thus we adhere to the rule of *Ozier* and *Sinclair* and hold that the statute of frauds operates even where there has been reliance on a promise.

In sum, though an employee's promise to forgo another job opportunity in exchange for a guarantee of lifetime employment is consideration to support the formation of a contract, the statute of frauds requires that contracts for lifetime employment be in writing. Accordingly, we affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*

JUSTICE NICKELS, dissenting:

I agree with the majority's conclusion that plaintiff's promise to forgo another job opportunity is sufficient consideration in return for defendant's promise of lifetime employment to plaintiff. However, I disagree with the majority's holding that the employment contract in the case at bar must be in writing because it falls within the requirements of the statute of frauds.

The writing requirement applies to "any agreement that is not to be performed within the space of one year from the making thereof." 740 ILCS 80/1 (West 1994). Commenting on this language, the Restatement (Second) of Contracts observes:

"[T]he enforceability of a contract under the one-year provision does not turn on the actual course of subsequent

events, nor on the expectations of the parties as to the probabilities. Contracts of uncertain duration are simply excluded; the provision covers only those contracts whose performance cannot possibly be completed within a year." Restatement (Second) of Contracts § 130, Comment *a*, at 328 (1981).

A contract of employment for life is necessarily one of uncertain duration. Since the employee's life may end within one year, and, as the majority acknowledges, the contract would be fully performed upon the employee's death (176 Ill. 2d at 490 n.1), the contract is not subject to the statute of frauds' one-year provision. See Restatement (Second) of Contracts § 130, Illustration 2, at 328 (1981); see also 72 Am. Jur. 2d *Statute of Frauds* § 14, at 578 (1974) ("The rule generally accepted by the authorities is that an agreement or promise the performance or duration of which is contingent on the duration of human life is not within the statute"); J. Calamari & J. Perillo, The Law of Contracts § 19—20 (3d ed. 1987) ("if A promises *** to employ X for life, the promise is not within the Statute because it is not for a fixed term and the contract by its terms is conditioned upon the continued life of X and the condition may cease to exist within a year because X may die within a year"). It is irrelevant whether the parties anticipate that the employee will live for more than a year or whether the employee actually does so.

The majority acknowledges that "many courts" subscribe to this view. More accurately, the Restatement rule represents "the prevailing interpretation" of the statute of frauds' one-year provision. Restatement (Second) of Contracts § 130, Comment *a*, at 328 (1981). Only a "distinct minority" of cases have ascribed significance to whether the parties expected that a contract would take more than a year to perform. J. Calamari & J. Perillo, The Law of Contracts § 19—18, at 808 (3d ed. 1987). According to Williston on Contracts:

"It is well settled that the oral contracts invalidated by the Statute because not to be performed within a year include only those which cannot be performed within that period. A promise which is not likely to be performed within a year, and which in fact is not performed within a year, is not within the Statute if at the time the contract is made there is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year.

In the leading case on this section of the Statute the Supreme Court of the United States said: 'The parties may well have expected that the contract would continue in force for more than one year; it may have been very improbable that it would not do so; and it did in fact continue in force for a much longer time. But they made no stipulation which in terms, or by reasonable inference, required that result. The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year.' " 3 W. Jaeger, Williston on Contracts § 495 at 575-79 (3d ed. 1960), quoting *Warner v. Texas & Pacific Ry. Co.*, 164 U.S. 418, 434, 41 L. Ed. 495, 504, 17 S. Ct. 147, 153 (1896).

Although the majority brands this interpretation "hollow and unpersuasive" (176 Ill. 2d at 490), it has a sound basis in the plain language of the statute. Corbin notes:

"[Courts] have observed the exact words of [the one-year] provision and have interpreted them literally and very narrowly. The words are 'agreement that is not to be performed.' They are not 'agreement that is not in fact performed' or 'agreement that may not be performed' or 'agreement that is not at all likely to be performed.' To fall within the words of the provision, therefore, the agreement must be one of which it can truly be said at the very moment that it is made, 'This agreement is not to be performed within one year'; in general, the cases indicate that there must not be the slightest possibility that it can be fully performed within one year." 2 A. Corbin, Corbin on Contracts § 444, at 535 (1950).

See also 3 W. Jaeger, Williston on Contracts § 495, at 585 n.7 (3d ed. 1960) (criticizing *Marshall v. Lowd*, 154 Me. 296, 147 A.2d 667 (1958)).

It is well established that where the words of a statutory provision are unambiguous, there is no need to resort to external aids of interpretation in order to glean the legislature's purpose. *People v. Hicks*, 164 Ill. 2d 218, 222 (1995). Although the statutory language at issue in this case is clear and unambiguous, the majority improperly relies upon policies identified in the introductory clause to the original English statute of frauds (176 Ill. 2d at 489) in order to significantly expand the scope of the one-year provision. Even assuming, *arguendo*, that it is proper to look beyond the language of the statute in order to determine its meaning, I do not find the majority's policy analysis to be persuasive justification for the broad construction it gives the statute.

The majority notes the dangers of stale evidence and faded memories. 176 Ill. 2d at 489. But the one-year provision does not effectively guard against these dangers because " '[t]here is no necessary relationship between the time of the making of the contract, the time within which its performance is required and the time when it might come to court to be proven.' " J. Calamari & J. Perillo, The Law of Contracts § 19—17, at 807 (3d ed. 1987), quoting *D&N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 454, 472 N.E.2d 992, 993, 483 N.Y.S. 2d 164, 165 (1984); see also E. Farnsworth, Contracts § 6.4, at 391 (1982).

Courts have tended to give the one-year provision a narrow construction precisely because of the lack of a discernable rationale for it. J. Calamari & J. Perillo, The Law of Contracts § 19—17, at 807 (3d ed. 1987); see also Restatement (Second) of Contracts § 130, Comment *a*, at 328 (1981) ("The design was said to be not to trust to the memory of witnesses for a longer time than one

year, but the statutory language was not appropriate to carry out that purpose. The result has been a tendency to construction narrowing the application of the statute"). I am inclined to do likewise. Since the one-year provision is so poorly suited to the aims it was ostensibly designed to accomplish, I see no compelling reason to expand the provision's scope beyond the class of contracts to which it applies by its terms. The narrow and literal interpretation that most courts have given to the language of the one-year provision is entirely appropriate under these circumstances.

Lacking any reasoned basis for its holding, the majority resorts to nearly tautological wordplay, declaring that because a "lifetime" employment contract is essentially a "permanent" employment contract, it inherently anticipates a relationship of long duration. 176 Ill. 2d at 490. Merely labelling a lifetime employment contract "permanent" should not change the result that the statute of frauds is inapplicable. See 2 A. Corbin, Corbin on Contracts § 446, at 549-50 (1950) ("A contract for 'permanent' employment is not within the one-year clause for the reason that such a contract will be fully performed, according to its terms, upon the death of the employee. The word 'permanent' has, in this connection, no more extended meaning than 'for life' "); 3 W. Jaeger, Williston on Contracts § 495, at 582 (3d ed. 1960) ("A promise of permanent personal performance is on a fair interpretation a promise of performance for life, and therefore not within the Statute"). The parties in this case allegedly agreed to plaintiff's employment for life. But with suitable modesty befitting mere mortals, the parties did not stipulate how long plaintiff's life should be. They left that matter—and hence the duration of the contract—to a higher power (I do not refer to this court).

The majority also suggests that its holding is neces-

sary to avoid confusion and uncertainty. 176 Ill. 2d at 491. I fail to see how the generally accepted rule that lifetime employment contracts need not be in writing is any more confusing or uncertain than the contrary rule adopted by the majority. Indeed, the majority's reasoning is likely to cause greater confusion and uncertainty. A lifetime employment contract is only one example of a broader general category of contracts of uncertain duration. While the majority has declared that lifetime employment contracts anticipate a relationship of longer than one year, the decision in this case supplies no guidance as to other types of contracts that do not, by their terms, set forth a specific time frame for performance. Contracting parties can no longer simply look to the actual terms of their agreement to ascertain whether it must be in writing. Instead, they are left to guess whether the type of contract they have entered into will be viewed by a court as inherently anticipating a relationship of more than one year.

In summary, the majority's holding: (1) is contrary to the relevant statutory language and the great weight of authority; (2) finds no justification in the policy considerations ostensibly underlying the statute of frauds; and (3) is likely to increase, rather than reduce, uncertainty regarding the application of the one-year provision. I would hold that the statute of frauds does not require the contract in this case to be in writing, and I would reverse the judgments of the courts below. Accordingly, I respectfully dissent.

JUSTICES MILLER and McMORROW join in this dissent.