McInerney v. Charter Golf, Inc., No. 80248

NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

              Docket No. 80248--Agenda 20--September 1996.

      DENNIS McINERNEY, Appellant, v. CHARTER GOLF, INC., Appellee.

                       Opinion filed May 22, 1997.

                                    

     JUSTICE HEIPLE delivered the opinion of the court:

     Is an employee's promise to forgo another job opportunity in

exchange for a guarantee of lifetime employment sufficient

consideration to modify an existing employment-at-will

relationship? If "yes," must such an agreement be in writing to

satisfy the requirements of the statute of frauds? These questions,

among others, must be answered in plaintiff Dennis McInerney's

appeal from an order of the appellate court affirming a grant of

summary judgment in favor of the defendant, Charter Golf, Inc.

Although we conclude that a promise for a promise is sufficient

consideration to modify a contract--even an employment contract--we

further conclude that the statute of frauds requires that a

contract for lifetime employment be in writing.

     The facts are uncomplicated. This case comes to us on a grant

of summary judgment, so our review is de novo (Barnett v. Zion Park

District, 171 Ill. 2d 378, 385 (1996)), and we will consider "the

pleadings, depositions, and admissions on file, together with the

affidavits, if any," to determine whether a genuine issue of

material fact exists (735 ILCS 5/2--1005(c) (West 1994)). From 1988

through 1992, Dennis McInerney worked as a sales representative for

Charter Golf, Inc., a company which manufactures and sells golf

apparel and supplies. Initially, McInerney's territory included

Illinois but was later expanded to include Indiana and Wisconsin.

In 1989, McInerney allegedly was offered a position as an exclusive

sales representative for Hickey-Freeman, an elite clothier which

manufactured a competing line of golf apparel. Hickey-Freeman

purportedly offered McInerney an 8% commission.

     Intending to inform Charter Golf of his decision to accept the

Hickey-Freeman offer of employment, McInerney called Jerry Montiel,

Charter Golf's president. Montiel wanted McInerney to continue to

work for Charter Golf and urged McInerney to turn down the Hickey-

Freeman offer. Montiel promised to guarantee McInerney a 10%

commission on sales in Illinois and Wisconsin "for the remainder of

his life," in a position where he would be subject to discharge

only for dishonesty or disability. McInerney allegedly accepted

Charter Golf's offer and, in exchange for the guarantee of lifetime

employment, gave up the Hickey-Freeman offer. McInerney then

continued to work for Charter Golf.

     In 1992, the relationship between Charter Golf and McInerney

soured: Charter Golf fired McInerney. McInerney then filed a

complaint in the circuit court of Cook County, alleging breach of

contract. The trial court granted Charter Golf's motion for summary

judgment after concluding that the alleged oral contract was

unenforceable under the statute of frauds because the contract

amounted to an agreement which could not be performed within a year

from its making. The appellate court affirmed, but on a wholly

different ground. No. 1--94--1764 (unpublished order under Supreme

Court Rule 23). The appellate court held that the putative contract

between McInerney and Charter Golf suffered from a more fundamental

flaw, namely, that no contract for lifetime employment even existed

because a promise to forbear another job opportunity was

insufficient consideration to convert an existing employment-at-

will relationship into a contract for lifetime employment.

     This court accepted McInerney's petition for leave to appeal

(155 Ill. 2d R. 315), and for the reasons set forth below, we

affirm on other grounds.

                                 ANALYSIS

     Employment contracts in Illinois are presumed to be at-will

and are terminable by either party; this rule, of course, is one of

construction which may be overcome by showing that the parties

agreed otherwise. Duldulao v. St. Mary of Nazareth Hospital Center,

115 Ill. 2d 482, 489 (1987). As with any contract, the terms of an

employment contract must be clear and definite (Duldulao, 115 Ill.

2d at 490) and the contract must be supported by consideration

(Ladesic v. Servomation Corp., 140 Ill. App. 3d 489, 491 (1986);

Martin v. Federal Life Insurance Co., 109 Ill. App. 3d 596, 602

(1982); Heuvelman v. Triplett Electrical Instrument Co., 23 Ill.

App. 2d 231, 235 (1959)).

                             A. Consideration

     Although the rules of contract law are well-established and

straightforward, a conflict has emerged in the appellate court

decisions on the subject of consideration in the context of a

lifetime employment contract. Several decisions have held that a

promise of lifetime employment, which by its terms purports to

alter an employment-at-will contract, must be supported by

"additional" consideration beyond the standard employment duties.

Heuvelman, 23 Ill. App. 2d at 235-36; Koch v. Illinois Power Co.,

175 Ill. App. 3d 248, 252 (1988); Ladesic, 140 Ill. App. 3d at 492-

93. These cases have held that an employee's rejecting an outside

job offer in exchange for a promised guarantee of lifetime

employment is not sufficient consideration to alter an employment-

at-will relationship. Heuvelman, 23 Ill. App. 2d at 236; Koch, 175

Ill. App. 3d at 252; Ladesic, 140 Ill. App. 3d at 492-93. The

premise underlying these cases is that the employee simply weighs

the benefits of the two positions, and by accepting one offer the

employee necessarily rejects the other. As such, these cases have

reasoned that the employee has not given up anything of value, and

thus there is no consideration to support the promise of lifetime

employment. Koch, 175 Ill. App. 3d at 252; Ladesic, 140 Ill. App.

3d at 492-93.

     One case, however, has taken issue with this analysis. In

Martin v. Federal Life Insurance Co., the appellate court held that

an enforceable contract for lifetime employment was formed when an

employee relinquished a job offer in exchange for a promise of

permanent employment from his current employer. Martin v. Federal

Life Insurance Co., 109 Ill. App. 3d 596, 601 (1982). The Martin

court recognized that there was consideration in an exchange of

promises: the employer promised to give up his right to terminate

the employee at-will, and in exchange the employee agreed to

continue working for his current employer and to forgo a lucrative

opportunity with a competitor. Martin, 109 Ill. App. 3d at 601.

     What is consideration? Under the prevailing view, embodied in

the Restatement (Second) of Contracts, consideration is the

bargained-for exchange of promises or performances, and may consist

of a promise, an act or a forbearance. Restatement (Second) of

Contracts §71 (1981). Thus, a promise for a promise is, without

more, enforceable. Restatement (Second) of Contracts §79, Comment

a, at 200 (1981). In past cases, this court has recognized this

basic precept, i.e., mutual assent and an exchange of promises

provides consideration to support the formation of a contract. See,

e.g., Patton v. Carbondale Clinic, 161 Ill. 2d 357, 372 (1994);

Steinberg v. Chicago Medical School, 69 Ill. 2d 320 (1977) (holding

that any act or promise which is of benefit to one party or

disadvantage to the other is sufficient "consideration" to support

a contract).

     While this court has never directly addressed the specific

requirements to establish a permanent employment contract, it has

held more generally that the employment relationship is governed by

the law of contract. Existence of an employment contract, express

or implied, is essential to the employer-employee relationship.

A.J. Johnson Paving Co. v. Industrial Comm'n, 82 Ill. 2d 341, 350

(1980). As with any contract, it is not possible for a contract of

employment to exist without consent of the parties. M&E Electric

Co. v. Industrial Comm'n, 57 Ill. 2d 113, 119 (1974). Indeed, this

court held in Duldulao, 115 Ill. 2d at 490, that an employee

handbook or other policy statement creates enforceable contractual

rights governed by the traditional requirements for contract

formation.

     In the instant case, Charter Golf argues that an employee's

promise to forgo another employment offer in exchange for an

employer's promise of lifetime employment is not sufficient

consideration. But why not? The defendant has failed to articulate

any principled reason why this court should depart from traditional

notions of contract law in deciding this case. While we recognize

that some cases have indeed held that such an exchange is

"inadequate" or "insufficient" consideration to modify an

employment-at-will relationship, we believe that those cases have

confused the conceptual element of consideration with more

practical problems of proof. As we discussed above, this court has

held that a promise for a promise constitutes consideration to

support the existence of a contract. To hold otherwise in the

instant case would ignore the economic realities underlying the

case. Here McInerney gave up a lucrative job offer in exchange for

a guarantee of lifetime employment; and in exchange for giving up

its right to terminate McInerney at will, Charter Golf retained a

valued employee. Clearly both parties exchanged bargained-for

benefits in what appears to be a near textbook illustration of

consideration.

      Of course, not every relinquishment of a job offer will

necessarily constitute consideration to support a contract. On the

related issue of mutuality of obligation, Charter Golf complains

that McInerney's promise to continue working was somehow illusory,

because it alleges that McInerney had the power to terminate the

employment relationship at his discretion while it lacked any

corresponding right. The court's decision in Armstrong Paint &

Varnish Works v. Continental Can Co., 301 Ill. 102, 108 (1922),

teaches that "where there is any other consideration for the

contract mutuality of obligation is not essential." Charter Golf's

argument on this point fails because McInerney continued working

for Charter Golf and relinquished his right to accept another job

opportunity. When, as here, the employee relinquishes something of

value in a bargained-for exchange for the employer's guarantee of

permanent employment, a contract is formed.

                           B. Statute of Frauds

     So there is a contract, but should we enforce it? Charter Golf

argues that the oral contract at issue in this case violates the

statute of frauds and is unenforceable because it is not capable of

being performed within one year of its making. By statute in

Illinois, "[n]o action shall be brought *** upon any agreement that

is not to be performed within the space of one year from the making

thereof, unless *** in writing and signed by the party to be

charged." 740 ILCS 80/1 (West 1994). Our statute tracks the

language of the original English Statute of Frauds and Perjuries.

29 Charles II ch. 3 (1676). The English statute enacted by

Parliament had as its stated purpose the prohibition of those "many

fraudulent practices, which are commonly endeavored to be upheld by

perjury and subordination of perjury." 29 Charles II ch. 3,

introductory clause (1676). Illinois' statute of frauds seeks to do

the same by barring actions based upon nothing more that loose

verbal statements.

     The period of one year, although arbitrary, recognizes that

with the passage of time evidence becomes stale and memories fade.

The statute proceeds from the legislature's sound conclusion that

while the technical elements of a contract may exist, certain

contracts should not be enforced absent a writing. It functions

more as an evidentiary safeguard than as a substantive rule of

contract. As such, the statute exists to protect not just the

parties to a contract, but also--perhaps more importantly--to

protect the fact finder from charlatans, perjurers and the problems

of proof accompanying oral contracts.

     There are, of course, exceptions to the statute of frauds'

writing requirement which permit the enforcement of certain oral

contracts required by the statute to be in writing. One such

exception is the judicially created exclusion for contracts of

uncertain duration. In an effort to significantly narrow the

application of the statute, many courts have construed the words

"not to be performed" to mean "not capable of being performed"

within one year. See Restatement (Second) of Contracts §130 (1981).

These cases hold that if performance is possible by its terms

within one year, the contract is not within the statute regardless

of how unlikely it is that it will actually be performed within one

year. Under this interpretation, the actual course of subsequent

events and the expectations of the parties are entirely irrelevant.

Restatement (Second) of Contracts §130, Comment a (1981). A

contract for lifetime employment would then be excluded from the

operation of the statute because the employee could, in theory, die

within one year, and thus the contract would be "capable of being

performed."

     We find such an interpretation hollow and unpersuasive. A

"lifetime" employment contract is, in essence, a permanent

employment contract. Inherently, it anticipates a relationship of

long duration--certainly longer than one year. In the context of an

employment-for-life contract, we believe that the better view is to

treat the contract as one "not to be performed within the space of

one year from the making thereof." To hold otherwise would

eviscerate the policy underlying the statute of frauds and would

invite confusion, uncertainty and outright fraud. Accordingly, we

hold that a writing is required for the fair enforcement of

lifetime employment contracts.

     The plaintiff argues that the statute of frauds writing

requirement is nonetheless excused because he performed, either

fully or partially, according to the terms of the oral contract. We

have held that a party who has fully performed an oral contract

within the one-year provision may nonetheless have the contract

enforced. American College of Surgeons v. Lumbermens Mutual

Casualty Co., 142 Ill. App. 3d 680, 700 (1986); Meyer v. Logue, 100

Ill. App. 3d 1039, 1043 (1981); Noesges v. Servicemaster Co., 233

Ill. App. 3d 158, 163 (1992). Full or complete performance of the

instant contract, by its terms, would have required the plaintiff

to work until his death, but our plaintiff lives.

     A party's partial performance generally does not bar

application of the statute of frauds, unless it would otherwise be

"impossible or impractical to place the parties in status quo or

restore or compensate" the performing party for the value of his

performance. Mapes v. Kalva Corp., 68 Ill. App. 3d 362, 368 (1979);

see also Payne v. Mill Race Inn, 152 Ill. App. 3d 269, 278 (1987).

This so-called exception resembles the doctrines of restitution,

estoppel and fraud, and exists to avoid a "virtual fraud" from

being perpetrated on the performing party. Barrett v. Geisinger,

148 Ill. 98 (1898); see also Restatement (Second) of Contracts

§130, Comment e (1981). In any event, our plaintiff has been fully

compensated for the work that he performed. Accordingly, part

performance--on these facts--will not take the case out of the

statute of frauds.

     Finally, the plaintiff argues that the defendant should be

estopped from asserting the defense of statute of frauds.

Traditionally, a party's reliance estopped the other party from

asserting the statute only under the doctrine of equitable

estoppel. Ozier v. Haines, 411 Ill. 160, 163-65 (1952); Sinclair v.

Sullivan Chevrolet Co., 45 Ill. App. 2d 10, 17-19 (1964), aff'd, 31

Ill. 2d 507 (1964). Equitable estoppel is available if one party

has relied upon another party's misrepresentation or concealment of

a material fact. Absent such misrepresentation or fraud, the

defense is not available. Ozier, 411 Ill. at 165; Ceres Illinois,

Inc. v. Illinois Scrap Processing, Inc., 114 Ill. 2d 133, 148

(1986). No misrepresentation has been alleged here.

     Rather, the plaintiff complains that he relied upon the oral

promises of his employer and makes much of the injustice done him--

indeed, too much. While agreeing to work for an employer and giving

up other employment opportunities can clearly be described as

reliance on the employer's oral promises concerning the terms of

employment, promissory estoppel does not bar the application of the

statute of frauds in Illinois. See Ozier, 411 Ill. 160; Sinclair,

31 Ill. 2d 507 (rejecting, at least implicitly, the suggestion that

promissory estoppel bars the application of the statute of frauds).

In the context of an employment relationship, reasonable reliance

is insufficient to bar the application of the statute of frauds.

Some authorities--reflected in the view of the Second Restatement--

have used promissory estoppel to bar the application of the statute

of frauds in a narrow class of cases in which a performing party

would otherwise be without an adequate remedy and there is some

element of unjust enrichment. Restatement (Second) of Contracts

§139, Comment c, at 355-56 (1981). We do not believe that this case

is one which requires us to adopt such a rule. As we have observed,

McInerney has been compensated for his services, and the sole

injustice of which he complains is his employer's failure to honor

its promise of lifetime employment. Our plaintiff, however, is a

salesman--a sophisticated man of commerce--and arguably should have

realized that his employer's oral promise was unenforceable under

the statute of frauds and that his reliance on that promise was

misplaced. Our parties entered into this disputed oral contract

freely and without any hint of coercion, fraud or

misrepresentation, and thus we adhere to the rule of Ozier and

Sinclair and hold that the statute of frauds operates even where

there has been reliance on a promise.

     In sum, though an employee's promise to forgo another job

opportunity in exchange for a guarantee of lifetime employment is

consideration to support the formation of a contract, the statute

of frauds requires that contracts for lifetime employment be in

writing. Accordingly, we affirm the judgment of the appellate

court.

Appellate court judgment affirmed.

                                                                         

     JUSTICE NICKELS, dissenting:

     I agree with the majority's conclusion that plaintiff's

promise to forgo another job opportunity is sufficient

consideration in return for defendant's promise of lifetime

employment to plaintiff. However, I disagree with the majority's

holding that the employment contract in the case at bar must be in

writing because it falls within the requirements of the Statute of

Frauds.

     The writing requirement applies to "any agreement that is not

to be performed within the space of one year from the making

thereof." 740 ILCS 80/1 (West 1994). Commenting on this language,

the Restatement (Second) of Contracts observes:

          "[T]he enforceability of a contract under the one-year

          provision does not turn on the actual course of

          subsequent events, nor on the expectations of the parties

          as to the probabilities. Contracts of uncertain duration

          are simply excluded; the provision covers only those

          contracts whose performance cannot possibly be completed

          within a year." Restatement (Second) of Contracts §130,

          Comment a, at 328 (1981).

A contract of employment for life is necessarily one of uncertain

duration. Since the employee's life may end within one year, and,

as the majority acknowledges, the contract would be fully performed

upon the employee's death (slip op. at 6 n.1), the contract is not

subject to the statute of frauds' one-year provision. See

Restatement (Second) of Contracts §130, Illustration 2, at 328

(1981); see also 72 Am. Jur. 2d Statute of Frauds §14 (1974) ("The

rule generally accepted by the authorities is that an agreement or

promise the performance or duration of which is contingent on the

duration of human life is not within the statute"); J. Calamari &

J. Perillo, The Law of Contracts §19--20 (3d ed. 1987) ("if A

promises *** to employ X for life, the promise is not within the

Statute because it is not for a fixed term and the contract by its

terms is conditioned upon the continued life of X and the condition

may cease to exist within a year because X may die within a year").

It is irrelevant whether the parties anticipate that the employee

will live for more than a year or whether the employee actually

does so.

     The majority acknowledges that "many courts" subscribe to this

view. More accurately, the Restatement rule represents "the

prevailing interpretation" of the statute of frauds' one-year

provision. Restatement (Second) of Contracts §130, Comment a, at

328 (1981). Only a "distinct minority" of cases have ascribed

significance to whether the parties expected that a contract would

take more than a year to perform. J. Calamari & J. Perillo, The Law

of Contracts §19--18, at 808 (3d ed. 1987). According to Williston

on Contracts:

               "It is well settled that the oral contracts

          invalidated by the Statute because not to be performed

          within a year include only those which cannot be

          performed within that period. A promise which is not

          likely to be performed within a year, and which in fact

          is not performed within a year, is not within the Statute

          if at the time the contract is made there is a

          possibility in law and in fact that full performance such

          as the parties intended may be completed before the

          expiration of a year.

               In the leading case on this section of the Statute

          the Supreme Court of the United States said: `The parties

          may well have expected that the contract would continue

          in force for more than one year; it may have been very

          improbable that it would not do so; and it did in fact

          continue in force for a much longer time. But they made

          no stipulation which in terms, or by reasonable

          inference, required that result. The question is not what

          the probable, or expected, or actual performance of the

          contract was; but whether the contract, according to the

          reasonable interpretation of its terms, required that it

          should not be performed within the year.' " 3 W. Jaeger,

          Williston on Contracts §495 at 575-79 (3d ed. 1960),

          quoting Warner v. Texas & Pacific Ry. Co., 164 U.S. 418,

          434, 41 L. Ed. 495, 504, 17 S. Ct. 147, 153 (1896).

     Although the majority brands this interpretation "hollow and

unpersuasive" (slip op. at 7), it has a sound basis in the plain

language of the statute. Corbin notes:

          "[Courts] have observed the exact words of [the one-year]

          provision and have interpreted them literally and very

          narrowly. The words are `agreement that is not to be

          performed.' They are not `agreement that is not in fact

          performed' or `agreement that may not be performed' or

          `agreement that is not at all likely to be performed.' To

          fall within the words of the provision, therefore, the

          agreement must be one of which it can truly be said at

          the very moment that it is made, `This agreement is not

          to be performed within one year'; in general, the cases

          indicate that there must not be the slightest possibility

          that it can be fully performed within one year." 2 A.

          Corbin, Corbin on Contracts §444, at 535 (1950).

See also 3 W. Jaeger, Williston on Contracts §495, at 585 n.7 (3d

ed. 1960) (criticizing Marshall v. Lowd, 154 Me. 296, 147 A.2d 667

(1958)).

     It is well established that where the words of a statutory

provision are unambiguous, there is no need to resort to external

aids of interpretation in order to glean the legislature's purpose.

People v. Hicks, 164 Ill. 2d 218, 222 (1995). Although the

statutory language at issue in this case is clear and unambiguous,

the majority improperly relies upon policies identified in the

introductory clause to the original English statute of frauds (slip

op. at 5-6) in order to significantly expand the scope of the one-

year provision. Even assuming, arguendo, that it is proper to look

beyond the language of the statute in order to determine its

meaning, I do not find the majority's policy analysis to be

persuasive justification for the broad construction it gives the

statute.

     The majority notes the dangers of stale evidence and faded

memories. Slip op. at 6. But the one-year provision does not

effectively guard against these dangers because " `[t]here is no

necessary relationship between the time of the making of the

contract, the time within which its performance is required and the

time when it might come to court to be proven.' " J. Calamari & J.

Perillo, The Law of Contracts §19--17, at 807 (3d ed. 1987),

quoting D&N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449,

454, 472 N.E.2d 992, 993, 483 N.Y.S. 2d 164, 165 (1984); see also

E. Farnsworth, Contracts §6.4, at 391 (1982).

     Courts have tended to give the one-year provision a narrow

construction precisely because of the lack of a discernable

rationale for it. J. Calamari & J. Perillo, The Law of Contracts

§19--17, at 807 (3d ed. 1987); see also Restatement (Second) of

Contracts §130, Comment a, at 328 (1981) ("The design was said to

be not to trust to the memory of witnesses for a longer time than

one year, but the statutory language was not appropriate to carry

out that purpose. The result has been a tendency to construction

narrowing the application of the statute"). I am inclined to do

likewise. Since the one-year provision is so poorly suited to the

aims it was ostensibly designed to accomplish, I see no compelling

reason to expand the provision's scope beyond the class of

contracts to which it applies by its terms. The narrow and literal

interpretation that most courts have given to the language of the

one-year provision is entirely appropriate under these

circumstances.

     Lacking any reasoned basis for its holding, the majority

resorts to nearly tautological wordplay, declaring that because a

"lifetime" employment contract is essentially a "permanent"

employment contract, it inherently anticipates a relationship of

long duration. Slip op. at 7. Merely labelling a lifetime

employment contract "permanent" should not change the result that

the statute of frauds is inapplicable. See 2 A. Corbin, Corbin on

Contracts §446, at 549-50 (1950) ("A contract for `permanent'

employment is not within the one-year clause for the reason that

such a contract will be fully performed, according to its terms,

upon the death of the employee. The word `permanent' has, in this

connection, no more extended meaning than `for life' "); 3 W.

Jaeger, Williston on Contracts §495, at 582 (3d ed. 1960) ("A

promise of permanent personal performance is on a fair

interpretation a promise of performance for life, and therefore not

within the Statute"). The parties in this case allegedly agreed to

plaintiff's employment for life. But with suitable modesty

befitting mere mortals, the parties did not stipulate how long

plaintiff's life should be. They left that matter--and hence the

duration of the contract--to a higher power (I do not refer to this

court).

     The majority also suggests that its holding is necessary to

avoid confusion and uncertainty. Slip op. at 7. I fail to see how

the generally accepted rule that lifetime employment contracts need

not be in writing is any more confusing or uncertain than the

contrary rule adopted by the majority. Indeed, the majority's

reasoning is likely to cause greater confusion and uncertainty. A

lifetime employment contract is only one example of a broader

general category of contracts of uncertain duration. While the

majority has declared that lifetime employment contracts anticipate

a relationship of longer than one year, the decision in this case

supplies no guidance as to other types of contracts that do not, by

their terms, set forth a specific time frame for performance.

Contracting parties can no longer simply look to the actual terms

of their agreement to ascertain whether it must be in writing.

Instead, they are left to guess whether the type of contract they

have entered into will be viewed by a court as inherently

anticipating a relationship of more than one year.

     In summary, the majority's holding: (1) is contrary to the

relevant statutory language and the great weight of authority; (2)

finds no justification in the policy considerations ostensibly

underlying the statute of frauds; and (3) is likely to increase,

rather than reduce, uncertainty regarding the application of the

one-year provision. I would hold that the statute of frauds does

not require the contract in this case to be in writing, and I would

reverse the judgments of the courts below. Accordingly, I

respectfully dissent.

     JUSTICES MILLER and McMORROW join in this dissent.