Gary MILLER, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

No. 01 C 204.

United States District Court,
N.D. Illinois,
Eastern Division.

March 24, 2003.

Keith L. Hunt, Keith L. Hunt & Associates, P.C., Chicago, IL, for Gary Miller.

Gary Miller, Lansing, IL, pro se.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Gary Miller was employed by Ford Motor Company ("Ford") at the Ford Chicago Assembly Plant ("the plant") for twenty-six years. In 1998 he was working as the head of security, but he was fired on September 18, 1998, in the wake of internal investigations into a series of "sex parties" held by employees on the grounds of the plant. Mr. Miller was not present at the parties or at work when they occurred, and did not know about them until after the fact. He cooperated in the investigations, but he was fired for failing to pre-

vent the parties. Ford was involved in a number of lawsuits alleging sexual harassment at the plant, some of which involved allegations about the sex parties. Mr. Miller claims that he was fired as a scapegoat so that Ford could demonstrate that it was taking remedial actions for the purposes of the other lawsuits. He sued originally in state court, alleging wrongful termination without cause, wrongful termination in violation of public policy, breach of contract, and negligence. Ford removed to federal court on the basis of diversity jurisdiction and moved to dismiss all claims. This motion was granted as to all claims except the claim for wrongful termination without cause. Ford has now moved for summary judgment on that claim. I grant the motion.

 Mr. Miller argues, pro se, that various oral representations were made to him which transformed his contract for employment at will into a contract for permanent lifetime employment. However, regardless of the content of these statements, oral contracts for lifetime employment are barred by the Illinois Statute of Frauds. *McInerney v. Charter Golf Inc.*, 176 Ill.2d 482, 490, 223 Ill.Dec. 911, 680 N.E.2d 1347 (1997) (citing 740 ILCS 80/1). On facts involving a much more explicit oral contract than Mr. Miller alleges, the Illinois Supreme Court wrote that such a contract "inherently . . . anticipates a relationship of long duration-certainly longer than one year" and is unenforceable. *Id.* Further, part performance by the parties "will not take the case out of the statute of frauds." *Id.*, 492, 223 Ill.Dec. 911, 680 N.E.2d 1347. Thus, Ford's representations to Mr. Miller cannot create a contract for permanent employment.

 Miller also argues that Ford's written policies created a lifetime employment contract. Statements in employee handbooks may create enforceable contractual rights where traditional contract

elements are present. *Duldulao v. St. Mary of Nazareth Hospital*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 318 (1987). First, the text of the statement must be clear enough that an employee would reasonably believe that an offer for permanent employment had been made. Second, the statement must be distributed to the employee in such a manner that the employee is made aware of its contents and reasonably believes an offer has been made. Third, the employee must accept the offer by beginning or continuing to work after learning of the statement. *Id.* After a thorough review of Ford's handbook and statement of policies, the Industrial/Employee Relations Administration Manual ("IRAM"), I was unable to find any promises which meet this test of enforceability. At best, the document contains vague statements of intention which fall far short of the language found by other courts to create a contract. *See id.* at 316 (finding a contract where the handbook distinguished between "probationary" and "permanent" employees and stated that the latter could be terminated only with "proper notice and investigation"); *Robinson v. McKinley Cmty. Servs., Inc.*, 19 F.3d 359, 361–62 (7th Cir.1994) (finding a contract where an employer's offer letter and manual referred to "tenure" and "permanent employment" and outlined a procedure for suspending that status for cause prior to termination); *Vajda v. Arthur Andersen & Co.*, 253 Ill.App.3d 345, 191 Ill. Dec. 965, 624 N.E.2d 1343, 1345 (1993) (finding a contract where a partner of the employer firm admitted to a company policy of requiring good cause for discharge, as described in a procedural manual).

It is especially difficult for Mr. Miller to argue that he reasonably believed that the IRAM granted him a lifetime employment contract in light of the contract he signed when he accepted his job in 1972. That document stated, in part, "I understand

that my employment ... may be terminated at any time, without advance notice, by either myself or my employer." After signing such a document, it is not reasonable to believe that one is a tenured lifetime employee.

Furthermore, the IRAM contains a prominent disclaimer. On page 2 of the introduction to Volume II, which covers salaried workers such as Mr. Miller, the IRAM states, in a set-off paragraph, "Nothing in this manual is intended to create or constitute an employment agreement with any employee ... The contents of this manual shall not, under any circumstances, be deemed to be part of any employment agreement with any employe [sic]." Some Illinois courts have chosen not to enforce disclaimers when they were, for example, listed under a section headed "Revisions" and buried on page 38 of the handbook. *Hicks v. Methodist Med. Ctr.*, 229 Ill.App.3d 610, 170 Ill.Dec. 577, 593 N.E.2d 119, 121 (1992). But the ERAM's express and unobscured disclaimer, uncontradicted by any clear promises elsewhere in the manual, indicates that the *Duldulao* test has not been met. *See Border v. City of Crystal Lake*, 75 F.3d 270, 274 (7th Cir.1996); *Long v. Ill. Mun. Elec. Agency*, 90 F.Supp.2d 181, 189 (C.D.Ill.2000).

The record leaves little doubt that Mr. Miller was a faithful and valuable employee and that he was callously discarded by Ford. Unfortunately, the law offers him no remedy. The motion for summary judgment is GRANTED.