In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2745

THOMAS BLANCHAR,

*Plaintiff-Appellant*,

*v.*

STANDARD INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:11-cv-00047-RLY-DKL — **Richard L. Young**, *Chief Judge.*

ARGUED NOVEMBER 5, 2013 — DECIDED NOVEMBER 27, 2013

Before BAUER, WILLIAMS, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Thomas Blanchar ("Blanchar")
brought suit against Standard Insurance Company ("The
Standard") to recover overtime pursuant to the Fair Labor
Standards Act ("FLSA"). 29 U.S.C. § 201 et seq. The Standard
moved for summary judgment, arguing that Blanchar qualified
as a bona fide administrative employee, and so was exempt
from the FLSA's overtime requirement. The district court

granted summary judgment in The Standard's favor, and
Blanchar now appeals.

## I.  BACKGROUND

In 2005, The Standard introduced a new product into the
403(b) and 457 markets.[1] Shortly thereafter, Blanchar was hired
as The Standard's Director of Institutional Sales/Product
Manager for its 403(b) and 457 products. Blanchar's responsi-
bilities included training staff about 403(b) plans, explaining
their differences from 401(k) plans, doing what was needed
to make The Standard's products competitive, and suggesting
product enhancements. His main duty was to promote the
sales of special markets retirement plans. In 2007, his title
changed to Special Markets Director for The Standard's
Retirement Plans business unit. Blanchar identified his major
duties as working with the sales team to develop and imple-
ment successful sales strategies, and partnering with the sales
team to provide guidance to clients about special markets
plans. His supervisor, Robert Baumgarten ("Baumgarten"),
identified one of Blanchar's key goals as "represent[ing] The
Standard in the marketplace as the product manager and
expert on Special Markets," and noted that Blanchar was

---

[1]  Both products are retirement plans: 403(b) plans are offered by public
schools and certain 501(c)(3) tax-exempt organizations, and 457 plans
are offered by state and local governments and 501(c)(3) tax-exempt
organizations. Under both plans, employees can save for retirement by
contributing to their personal accounts; employers can also contribute
to employees' accounts. 403(b) plan, 457 plan, http://www.irs.gov/
Retirement-Plans/IRC-403%28b%29-Tax-Sheltered-Annuity-Plans;
http://www.irs.gov/Retirement-Plans/IRC-457%28b%29-Deferred-
Compensation-Plans (last visited November 14, 2013).

considered "the 403(b)/457 answer man" by The Standard's partners.

Blanchar's responsibilities included training salespeople on the differences between 401(k) and 403(b) plans and traveling to make presentations with salespeople. He often provided guidance to sales consultants about how to convince clients to use The Standard's 403(b) plan and provided talking points to The Standard's sales consultants about why The Standard's products were better than those of its competitors. Though he gave advice to sales representatives, Blanchar was not involved in direct sales of 403(b) or 457 plans. Blanchar conducted webinars and spoke at conferences as well, representing The Standard as its 403(b) expert. When conducting webinars or presenting at conferences, Blanchar used materials that he had personally created and which had been approved by The Standard's legal and marketing departments, and answered audience questions based on his knowledge and experience.

Additionally, Blanchar made recommendations to his supervisor, Baumgarten, about products that would be suitable for sale in the 403(b) marketplace and recommended certain business opportunities to The Standard. Although Blanchar had no final decision-making authority, Baumgarten typically sought advice from Blanchar on 403(b) and 457 plans and stated that he "routinely relied on [Blanchar's] advice and guidance concerning issues related to The Standard's special markets products and when making decisions about potential 403(b) opportunities." He also stated that The Standard typically followed Blanchar's recommendations about whether to pursue potential business opportunities. Blanchar earned a base salary of $102,000, and could earn incentive-based

compensation based on the total number of 403(b) and 457 plans sold by The Standard's salespeople during the year. He worked from home and met with Baumgarten only about once a year.

Blanchar claims that he is entitled to overtime compensation for the hours he worked in excess of forty hours per week under the FLSA; The Standard, however, contends that Blanchar qualifies as a bona fide administrative employee and so is exempt from the overtime requirements of the FLSA. While the material facts in this case are not in dispute, the parties disagree as to how Blanchar's job duties and responsibilities should be classified.

## II.  DISCUSSION

We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. *Musch v. Domtar Indus. Inc.*, 587 F.3d 857, 859 (7th Cir. 2009). The evaluation of a FLSA claim requires a "thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012); *see also Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 870 (7th Cir. 2008). The burden is on the employer to establish that an employee is covered by a FLSA exemption. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974).

Under the FLSA, employees are entitled to overtime pay for any hours worked over forty hours per week, unless they fall within a certain exemption set forth by the FLSA. 29 U.S.C. §§ 207, 213. One such exemption includes employees who are employed in a "bona fide executive, administrative, or profes-

sional capacity." 29 U.S.C. § 213(a)(1). The Secretary of Labor has issued regulations defining this exemption and delineating its scope. 29 C.F.R. § 541.200(a) states:

> The term "employee employed in a bona fide administrative capacity" in section 213(a)(1) of the Act shall mean any employee: (1) compensated on a salary or fee basis at a rate of not less than $455 per week … exclusive of board, lodging, or other facilities; (2) whose primary duty is the performance of office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

The parties agree that Blanchar makes more than $455 per week and so qualifies for the administrative employee exemption under its first prong. Blanchar, however, denies that his primary duty is the performance of work directly related to the management or general business operations of the employer and that his primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

### A. Work Directly Related to the Management or General Business Operations of the Employer

To satisfy the "directly related" prong of the test, an employee "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line

or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). "[E]mployees acting as advisers or consultants to their employer's clients or customers (as tax experts of financial consultants, for example) may be exempt." § 541.201(c). "Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include … determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing, or promoting the employer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption." § 541.203(b).

To determine whether Blanchar's activities satisfy the "directly related" prong of the administrative exemption, we look to our recent decision in *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560 (7th Cir. 2012). In *Schaefer-LaRose,* we were asked to determine whether pharmaceutical sales representatives satisfied the administrative employee exemption to the FLSA's overtime requirement. *Id.* at 562. We concluded that the sales representatives satisfied the "directly related" prong of the administrative exemption even though they were involved with sales. *Id.* at 577. We noted that they did not actually sell any pharmaceuticals to physicians, but instead worked "to promote sales." *Id.* We reasoned that since pharmaceutical sales representatives spend the majority of their time preparing for and making sales calls with the goal of influencing physicians' preferences for their product, their "primary duty is the performance of work directly related to the general

business of the employers, which satisfies the second prong of the administrative exemption." *Id.*

Our sister circuit's decision in *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997), provides guidance as well. In *John Alden*, the court was asked to determine whether marketing representatives were exempt from recovering overtime pay under the FLSA. *Id.* at 3. The court noted that the marketing representatives engaged in no direct sales of products; instead, they discussed how the company's products would meet the needs of prospective customers, recommended products to customers, educated insurance agents regarding products, and gave group presentations to prospective customers. *Id.* at 3–4. The court concluded that since the marketing representatives' duties were "aimed at promoting … customer sales *generally*," their duties were directly related to the management and general business operations of the company. *Id.* at 10.

The duties of the pharmaceutical salespeople in *Schaefer-LaRose* and the marketing representatives in *John Alden* bear a striking resemblance to those of Blanchar in the instant case. Blanchar's primary duty was to work with salespeople to promote the sales of The Standard's financial products. He fielded calls from salespeople, recommended marketing materials and plans for certain customers, and educated The Standard's salespeople on the different types of plans. He did not directly engage in the sales of any 403(b) or 457 plans; he merely assisted salespeople with those sales. He frequently provided talking points and advice to pension salespeople, spoke at industry conferences and seminars, and educated firms about 403(b) plans. Since Blanchar was involved in

advising salespeople and promoting the sales of 403(b) and 457 plans generally, we find that his duties and responsibilities satisfy the "directly related" prong of the administrative exemption.

**B.  Work Involving Discretion and Independent Judgment with Respect to Matters of Significance**

Blanchar also contends he does not meet the requirements for the "discretion and independent judgment" prong of the administrative exemption. "Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to … whether the employee provides consultation or expert advice to management; [and] whether the employee is involved in planning long- or short-term business objectives." 29 C.F.R. § 541.202(b). The phrase "work involving discretion and independent judgment" implies that an employee "has authority to make an independent choice, free from immediate direction or supervision." § 541.202(c). "The term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. … The fact that an employee's decision may be subject to review … does not mean that the employee is not exercising discretion and independent judgment." *Id.* Courts will also consider:

> [T]he employee's freedom from direct supervision, personnel responsibilities, troubleshooting or problem-solving activities on behalf of management, use of personalized communication techniques …

> responsibility for assessing customer needs, primary contact to public or customers on behalf of the employer, the duty to anticipate competitive products or services and distinguish them from competitor's products or services, advertising or promotion work, and coordination of departments, requirements, or other activities for or on behalf of employer or employer's clients or customers.

Defining and Delimiting the Exemption for Executive, Administrative, Professional, Outside Sales, and Computer Employees, 69 Fed. Reg. 22,144 (Apr. 23, 2004).

In *Schaefer-LaRose,* we found that the pharmaceutical sales representatives satisfied the discretion and independent judgment prong of the administrative exemption. 679 F.3d at 583. We noted that while the sales representatives worked within the confines of tightly controlled messages, their calls were not scripted. *Id.* at 565. The "representatives' ability to be responsive to physicians' needs require[d] significant discretion in the manner and mode of the delivery of that message and in the details emphasized." *Id*. In addition, we relied on the fact that the sales representatives structured their own days, worked largely alone, and were not subject to strict oversight and control in the performance of their duties. *Id*. at 581–82. We concluded that since their work involved a "great deal of judgment," and required far more than "applying well-established techniques, procedures or specific standards described in manuals," 29 C.F.R. § 541.202(e), the sales representatives were properly characterized as exempt administrative employees. *Id.* at 583.

In *John Alden*, the court determined that the marketing representatives exercised discretion and independent judgment when carrying out their duties, satisfying the administrative employee exemption. 126 F.3d at 13. The court highlighted the fact that the employees did not use prepared scripts or sales pitches and were not "merely 'skilled' workers who operate[d] within a strict set of rules." *Id.* at 14.

Blanchar's duties—promoting sales, advising sales staff, and fielding questions—required the exercise of discretion and independent judgment. He scripted talking points for consultants to further the sales of 403(b) and 457 plans. He used his knowledge and experience to develop presentation materials and to answer questions from pension consultants. When presenting or speaking at conferences, Blanchar used materials he himself had prepared, which were later approved by The Standard's legal and marketing departments. He worked largely alone and met with his supervisor only once a year. Blanchar's supervisor, Baumgarten, often looked to Blanchar for recommendations about products that would be suitable for sale in the 403(b) marketplace, and stated that The Standard often followed Blanchar's recommendations. Though Blanchar lacked final decision-making authority, his work involved a great deal of discretion and independent judgment. Therefore, we find that Blanchar qualifies as an exempt administrative employee under this prong as well.

### III.  CONCLUSION

Even when the facts are taken in the light most favorable to Blanchar, The Standard is entitled to summary judgment. Under the applicable regulations as well as case law,

Blanchar's work for The Standard satisfies the requirements of the administrative employee exemption, so he is not entitled to overtime compensation under the FLSA. We AFFIRM the decision of the district court.