[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11010
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cv-00111-DHB-BKE

VERNEISA JACKSON,

Plaintiff-Appellant,

LARRY JACKSON, et al.,

Plaintiffs,

versus

CORRECTIONS CORPORATION OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(April 1, 2015)

Before ED CARNES, Chief Judge, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

Verneisa Jackson, proceeding pro se, appeals the district court's grant of summary judgment in favor of her former employer, Corrections Corporation of America (CCA), on her unpaid overtime claim under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. She also appeals the district court's denial of her two motions to compel discovery, as well as its denial of her motion for leave to file a pro se supplemental response to CCA's motion for summary judgment and taxing of costs against her.

I.

Jackson was employed by CCA at the McCrae Correctional Facility in McCrae, Georgia, from August 2003 until her resignation in May 2010. She was originally hired as the librarian in the facility's education department. When CCA learned one year later that Jackson did not have a library sciences degree — a requirement for the librarian position — she was encouraged to apply for other positions at the facility. Jackson applied for and accepted a case manager position, which she held for three years.

In April 2008, Jackson wanted to be back in the education department and applied for and accepted the librarian aide position. At the time, Jackson's old librarian position was vacant. Jackson testified that from the time she started as

2

librarian aide until her resignation, she performed the duties of both the librarian aide and the librarian. That testimony is corroborated by Jackson's performance review covering the period of November 1, 2008, to October 31, 2009, which indicated that she was "accountable as librarian and library aide simultaneously" and "ha[d] supervised library services for the last 17 months as librarian even though uncompensated."

In February 2009, Jackson submitted an "informal application" for the vacant librarian position, hoping that the library sciences degree requirement could be waived. In September 2009, she developed irritable bowel syndrome and asked to work from home more often. CCA approved a modified work schedule and gave Jackson timesheets with instructions to keep a log of hours worked and tasks completed.

As far as we can tell from the record and the briefs on appeal, Jackson claims that she worked, on average, 7.5 to 10 hours per week of unpaid overtime between April 2009 and September 2009, and 5 to 10 hours of overtime per week between September 2009 and February 2010. Those alleged overtime hours included both "on the clock" hours at the McRae facility and "off the clock" hours worked from home. Jackson has never specified how many hours fell into each category. She acknowledges, however, that she was properly compensated for the "on the clock" hours and says that the overtime pay was accompanied by "verbal

3

reprimands" and instructions from CCA to not exceed 40 hours per week. Jackson testified that she nonetheless continued working extra hours from home "because [she] wanted the [librarian] position." When asked by CCA's counsel whether she reported any of the alleged overtime hours on her timesheets, Jackson responded, "I think only once. . . . in January [2010]."[1] Jackson explained that she did not typically record her overtime because it was her belief that "no one was planning on compensating me for those hours."

Jackson further testified that she repeatedly complained about working unpaid overtime. She went to CCA's human resources manager "on approximately six occasions between April 2008 and February 1, 2010," to the assistant warden "on two occasions in the fall of 2009," and to the warden "on three occasions during early summer of 2008 and early and mid 2009." According to Jackson, those individuals "told [her] that [she] would not be paid overtime, but they never instructed [her] not to work overtime."[2]

_____

[1] Jackson does not claim, at least as far as we can tell, that she was not paid for the overtime hours she reported in January 2010.

[2] In November 2009, Jackson filed a formal grievance with CCA alleging, among other things, that she had made the assistant warden aware that she had been working unpaid overtime from home to complete the duties of two positions and "he had no reply or problem with [it]." CCA investigated the claim internally and concluded that it was unsubstantiated. Jackson also testified about a conversation she had with a supervisor when she was "about two hours short" of the 40-hour workweek for a few weeks in the summer of 2009. Her supervisor told her that she needed to fill out "deviation forms" to report the missed time. Jackson complained that it was "unfair" that she had not been compensated for overtime but was now "getting in trouble" for missed time. According to Jackson, her supervisor said that she could fill in the missed time on

In November 2009, CCA told Jackson that she would not be selected for the librarian position due to budgetary concerns.  In February 2010, Jackson received a memorandum from CCA instructing her to return to a normal work schedule at the McRae facility and cease working from home.  Instead of returning to a normal schedule, Jackson took leave under the Family Medical Leave Act, and then, in May 2010, resigned from CCA altogether.

In December 2011, Jackson filed a complaint alleging various violations of Title VII, § 1981, the FLSA, and state tort law. At the time of filing, Jackson was represented by K. Prabhaker Reddy.  Fourteen days before the initial discovery deadline, Reddy moved to withdraw as Jackson's counsel and Jackson moved to extend discovery.  The court granted both motions and set the discovery deadline for December 26, 2012.  The court instructed Jackson to obtain replacement counsel.

On December 4, Jackson moved for another extension of time to complete discovery and to seek counsel.  The district court granted the motion, set a new discovery deadline for April 5, 2013, and stated that Jackson's new counsel should enter an appearance by January 25, 2013.  On January 29, Jackson filed a "notice to continue to seek legal counsel" in which she sought an additional 14 days.  On

---

her timesheet with the extra hours she had worked from home, but did not indicate that she could be compensated for all of her hours.

5

March 26, the court administratively closed the case, citing Jackson's failure to retain counsel and the numerous extensions it had already granted.

In April 2013, Jackson retained Ainsworth Dudley as her new counsel. Dudley entered an appearance and moved to reopen the case and extend discovery by 60 days. The district court granted the motion and set the discovery deadline for July 22, 2013.

On July 3, 2013, less than 20 days before the discovery deadline, Jackson filed a motion to compel discovery in which she complained that CCA had not fully responded to her discovery requests. Specifically, Jackson asserted that CCA had not yet responded to a discovery-deficiency letter from Reddy (Jackson's original counsel). On July 18, CCA and Jackson filed a joint motion to (1) stay CCA's response to Jackson's motion to compel, and (2) extend discovery and summary judgment deadlines by 45 days. The district court granted the motion and set the discovery deadline for September 5, 2013.

On that deadline — September 5, 2013 — Jackson filed a second motion to compel discovery. CCA filed briefs in opposition to both motions to compel. Regarding the discovery-deficiency letter, CCA stated that it had never received the letter from Reddy; instead, it had received a copy of Reddy's letter attached to an email from Dudley and it did not respond to the letter because Reddy no longer represented Jackson. Based on emails provided to the court, CCA repeatedly

6

advised Dudley that it would respond to the letter if he would first ratify its contents, to which Dudley never responded.   The district court referred both motions to compel to a magistrate judge.  On October 22, 2013, the magistrate judge denied Jackson's motions to compel in a 10-page order that made extensive findings of fact and concluded that those facts "evidence[d] a complete absence of diligence and good faith throughout the discovery period by [Jackson]."  Jackson filed objections to the magistrate judge's order, but the district court overruled them.

On November 21, 2013, CCA moved for summary judgment on all of Jackson's claims.  CCA attached to its motion a copy of its compensation policy, but the effective date on the policy was April 15, 2011, well after Jackson's resignation.  CCA's exhibits did not include any timesheets, records, or other documentation of the hours Jackson worked during the relevant time period (or any other period for that matter).

Dudley, on behalf of Jackson, responded to CCA's motion for summary judgment.  The response neglected to address many of CCA's arguments, but it did argue that Jackson had established a prima facie case under the FLSA because her testimony created a genuine issue of material fact about whether she worked overtime without pay and whether CCA was aware of it.  Dudley's statement of

material facts cited almost exclusively to Jackson's sworn declaration, which was attached as an exhibit.[3]

Two weeks after Dudley filed Jackson's response, Jackson filed a motion for leave to file a pro se supplemental response to CCA's motion for summary judgment.  Dudley signed and filed the motion for leave, but wrote that his client wanted "an opportunity to present this evidence and raise these arguments with the Court on a pro se basis."  The pro se supplemental response, prepared by Jackson, was attached to the motion along with several new exhibits and a revised statement of material facts.[4]  The supplemental response included arguments and evidence that had not been raised or referred to in the initial response.

The district court held a hearing on CCA's motion for summary judgment and Jackson's motion for leave to file a pro se supplemental response.  Regarding the latter motion, the court informed Jackson that she could not "have it both ways" and represent herself while also represented by counsel.  Dudley told the court that he did not endorse or join Jackson's motion.

---

[3] The declaration stated in relevant part:  (1) "In April of 2008, [Jackson] began working as librar[ian] aide;" (2) "For the first six or seven months she was employed as librar[ian] aid[e] she worked 7.5 to 10 overtime hour per week without pay;" (3) "In September 2009, she began working 5 [to] 10 hours per week without pay;" (4) "[Jackson] complained about not being paid overtime to her human resources manager . . . to Assistant Warden Orsolits . . . [and] to Warden Wells;" and (5) "CCA refused to pay overtime, but never instructed her not to work overtime."

[4] CCA opposed the motion, arguing that Jackson should not be permitted to file pro se documents while represented by counsel, the supplemental response was untimely, Jackson had failed to allege cause or excusable neglect for her untimeliness, and the litigation had gone on long enough.

One day after the hearing, the district court denied Jackson's motion, reiterating that "she [could] not be represented by counsel and file materials pro se." The day after that, Dudley filed a motion to withdraw as Jackson's counsel. Several days passed before Jackson filed a notice of her intent to proceed pro se and a motion requesting that the court reconsider its stance on her pro se supplemental response. The court granted Dudley's motion to withdraw and denied Jackson's motion for reconsideration.

On February 11, 2014, the court granted CCA's motion for summary judgment on all of Jackson's claims. Regarding Jackson's FLSA claim, the court found that (1) any overtime claim that may have accrued before December 23, 2008 — three years before Jackson filed her complaint — was barred by the applicable statute of limitations, and (2) Jackson had "fail[ed] to create a genuine issue of fact that she worked overtime without compensation" after December 23, 2008. The court noted that Jackson's failure to "track and log her time accurately" while working from home was "particularly detrimental to her claim." For that reason and others, the district court concluded that CCA was entitled to summary judgment on Jackson's FLSA claim.[5]

This is Jackson's appeal.

---

[5] In addition to its findings and conclusions on Jackson's FLSA claim, the court found that Jackson had abandoned all but two claims (her FLSA claim and her race discrimination claim based on CCA's alleged failure to promote her to the librarian position) and that CCA was entitled to summary judgment on the failure to promote claim. Jackson does not challenge those findings on appeal.

## II.

Jackson first contends that the district court abused its discretion in denying her motions to compel. We review a district court's denial of a motion to compel discovery for an abuse of discretion. Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006). The district court has broad discretion to compel or deny discovery, and we will therefore leave undisturbed a district court's ruling unless we find that it made a clear error of judgment or applied the wrong legal standard. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1306–07 (11th Cir. 2011). A district court does not abuse its discretion in denying motions to compel for failure to comply with the good faith conferral requirement of Federal Rule of Civil Procedure 37 where "the district court's interpretation of the facts [is not] untenable." Holloman, 443 F.3d at 844.

The magistrate judge's thorough and well-reasoned order denying Jackson's motions to compel included a meticulous chronology of correspondence between the parties during relevant portions of the extended discovery period. The findings of fact that flowed naturally from that chronology were far from "untenable." See id. Critically, Jackson does not argue on appeal that the findings of fact were erroneous; instead, she reiterates the same arguments that she made to the district court and otherwise rails against what she perceives to be CCA's calculated and willful dodging of discovery. But regardless of whether Jackson's perception is

grounded in reality, it is not grounded in the record.[6]  Having carefully reviewed

that record, we agree with the magistrate's judge conclusion that it "evidences a

complete absence of diligence and good faith throughout the discovery period by

[Jackson]."  Thus, the court's denial of Jackson's motions to compel was not an

abuse of discretion.

III.

Next, Jackson contends that the district court abused its discretion by not

granting her leave to file a pro se supplemental response to CCA's motion for

summary judgment.  See Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1320

(11th Cir. 2013) ("We review a district court's decision made in the course of

managing its docket for an abuse of discretion."); see also Mann v. Taser Int'l Inc.,

588 F.3d 1291, 1302 (11th Cir. 2009) ("We . . . review a district court's application

of local rules for an abuse of discretion.").

It is undisputed that at the time Jackson sought the court's leave, she was

still represented by Dudley, who had already filed a response to CCA's motion for

summary judgment.  At a hearing on this and other motions, the district court told

Jackson that it would not consider pro se filings while she was still represented by

counsel.  In its order denying Jackson's motion, the court wrote:  "As explained to

---

[6] One illustration of Jackson's skewed perception is the disputed discovery-deficiency letter. CCA told Dudley on more than one occasion that it would respond to Reddy's letter if he — Dudley — would ratify its contents.  That was a perfectly reasonable request to which Dudley never responded.  It should be noted that a delayed response or non-response to communication from opposing counsel appears to have been Dudley's modus operandi.

Plaintiff at the hearing on January 21, 2014, she may not be represented by counsel and file materials pro se." (Emphasis in original.)

The court's unqualified statement that Jackson could not at the same time be represented by counsel and file materials pro se implies an unqualified rule. But the relevant rule actually states that "[a] party represented by counsel may not file any motion, brief, or other paper pro se absent prior leave of court." U.S. Dist. Ct. Rules, S.D. Ga., L.R. 11.3 (emphasis added). The emphasized language is critical here because Jackson's pro se supplemental response was not, as the court's order would seem to suggest, a stand-alone filing; it was instead attached to her motion for leave of the court.[7] The court did not explain why it was denying leave in this particular case.

In any event, upon a careful review of Jackson's proposed supplemental response, we conclude that any error in the court's decision to deny Jackson's motion for leave of the court to file the response was harmless error. See Fed. R. Civ. P. 61 (error is harmless if it "does not affect the substantial rights of the parties"); EEOC v. Alton Packaging Corp., 910 F.2d 920, 924 (11th Cir. 1990) ("A

---

[7] The court cited an unpublished decision of our Court concluding that it was not an abuse of discretion for a district court to strike a pro se motion filed by a party represented by counsel where that court had a local rule prohibiting the filing of such a motion absent prior leave of court, and no such leave had been obtained. See Jones v. United Space Alliance, L.L.C., 170 F. App'x 52, 57 (11th Cir. 2006) (unpublished). Not only does Jones lack precedential effect because it is unpublished, it also lacks persuasive effect because it does not speak to the issue before us now. The litigant in Jones filed a pro se paper without first obtaining leave of the court, a clear violation of those local rules. Here, Jackson moved the court for leave to file her pro se supplemental response, an action that the relevant local rules do not proscribe.

12

reviewing court must disregard as harmless error any error which does not affect the substantial rights of the parties.").  Simply put, none of the arguments raised by Jackson's supplemental response had any merit, and therefore her substantial rights were not affected by the court's failure to allow or consider those arguments.

IV.

We review de novo the district court's grant of summary judgment in favor of CCA on Jackson's FLSA claim, applying the same standards as the district court and viewing all facts and reasonable inferences in the light most favorable to Jackson.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001).[8]

It is well established that an employee bringing a claim for unpaid overtime wages must initially demonstrate that she performed work for which she was not properly compensated.  See, e.g., Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1314–15 (11th Cir. 2007).  However, "it is the employer's duty to keep records of the

---

[8] Jackson has abandoned any challenge to the district court's grant of summary judgment on claims other than the portion of her FLSA claim that allegedly accrued on or after December 23, 2008.  She did so by not arguing to us that the district court erred in:  (1) finding that any unpaid overtime claim that may have accrued before December 23, 2008 — three years before Jackson filed her complaint — was barred by the applicable statute of limitations; (2) granting summary judgment to CCA on her racial discrimination claims under § 1981 and Title VII; and (3) concluding that she had abandoned the other claims raised in her amended complaint.  See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned.").

13

employer's wages, hours, and other conditions and practices of employment." Id. at 1315.  For that reason, in situations where the employer has failed to keep records or the records cannot be trusted, the employee satisfies her burden of proving that she performed work without compensation if she "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. at 1316 (quotation marks omitted); see also Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1315 (11th Cir. 2013) (noting that if the employer failed to keep time records, the burden on the employee to show that she worked overtime without compensation is "relaxed").[9]

Here, Jackson failed to meet even the relaxed burden of "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." See Allen, 495 F.3d at 1316.  She has never stated with any clarity or precision the number of hours she allegedly worked, the amount or nature of that work, where or when the work was completed, or anything else that would assist a factfinder in approximating Jackson's unpaid overtime.  It is undisputed that CCA provided Jackson with timesheets to document both her time and tasks completed while she was working from home.  But the only month for which Jackson documented any overtime hours was January of 2010, and as far as

---

[9] If the employee satisfies her burden, the burden then shifts to the employer to present evidence that negates the reasonableness of the inference to be drawn from the employee's evidence. Lamonica, 711 F.3d at 1315.  In this case, we conclude that the burden never shifted to CCA.

14

we can tell, she does not include those extra hours among the ones she claims were unpaid. Jackson's vague and contradictory assertions concerning the number of hours she worked from home[10] are not evidence from which can be drawn just and reasonable inferences about the nature or extent of that work. See id. We agree with the district court that Jackson failed to create a genuine issue of material fact about whether she performed work for which she was not paid.

## V.

Finally, Jackson contends that the district court abused its discretion in taxing litigation costs against her under Federal Rule of Civil Procedure 54(d)(1), but she has not preserved this claim for appeal because she failed to object to the award of costs in district court. United States EEOC v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000) ("Failure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal."). Even if she had preserved the claim for appeal, we see no reason to disturb the district court's decision to award

---

[10] Statements made in Jackson's sworn declaration contradict statements made during her deposition. For example, her sworn declaration states that she worked "7.5 [to] 10 hours per week" of uncompensated overtime "for the first six or seven months that [she] worked as [a] library aid[e]." By contrast, she stated in her deposition that she worked "15, 20 hours a week . . . for maybe [the first] six, seven months." Setting aside the obvious discrepancy in hours, we also note that the "first six or seven months" of Jackson's tenure as librarian aide translates roughly to April through September 2008, which contradicts other parts of the record reflecting that Jackson's overtime claim accrued in 2009; indeed, Jackson's response brief in opposition to CCA's motion for summary judgment stated that she worked "between 7.5 to 10 hours [per] week overtime from April to September, 2009." (Emphasis added.) Although those errors might be merely typographical, they are representative of a poorly developed, poorly compiled, and poorly presented factual record. In light of the state of the record, the district court was left with no choice but to grant summary judgment in favor of CCA, and we are left with no choice but to affirm.

litigation costs.  See id. at 619 ("This Court will not disturb a costs award in the absence of a clear abuse of discretion.") (quotation marks omitted).

**AFFIRMED.**