Ashley **INGRAM**, Plaintiff,

v.

David M. **HAGEN**, Defendant.

Case No. 14–cv–0792–MJR–PMF

United States District Court, S.D. Illinois.

Signed November 19, 2015

Thomas E. Kennedy, III, Sarah Jane Hunt, Law Offices of Thomas E. Kennedy, III, L.C., Lisa Langeneckert, Law Office of Lisa C. Langenecker, St. Louis, MO, for Plaintiff.

Beth C. Boggs, Boggs, Avellino, Lach & Boggs, LLC, St. Louis, MO, Douglas C. Gruenke, Bruckert, Gruenke & Long, P.C., New Baden, IL, for Defendant.

## MEMORANDUM AND ORDER

REAGAN, Chief District Judge:

Ashley Ingram began working as a landscape designer and office manager for David Hagen in December 2009. By 2012, the employment relationship began to fall apart, and in October of that year Ingram was terminated. In 2014, Ingram filed suit against Hagen in this Court, claiming that Hagen failed to pay her overtime and a minimum wage in violation of the Fair Labor Standards Act and the Illinois Minimum Wage Law, failed to pay her owed wages in violation of her contract and the Illinois Wage Payment and Collection Act, failed to pay her sufficient wages under quasi-contract theories, sexually harassed her during the course of her employment, and retaliated against her for objecting to his sexual harassment.

Ingram has now moved for partial summary judgment as to Hagen's status as an employer, her status as an employee, and her burden of proof as to damages under the Fair Labor Standards Act and the Illinois analogue. She also seeks judgment as to Hagen's liability under the Fair Labor Standards Act. Hagen, too, has moved for partial summary judgment, claiming that Ingram lacks any evidence of overtime and minimum wage violations, that she is exempt from coverage under the Fair Labor Standards Act and the Illinois analogue, and that there is no basis for contract or quasi-contract relief. For the reasons below, Ingram's motion for summary judgment is granted in part and denied in part, and Hagen's motion is denied in the entirety.

### Background

Hagen first met Ingram while she was employed as a cocktail waitress at Club Hollywood, an adult club in Washington Park, Illinois. In December 2009, Hagen hired Ingram to work at his landscaping business, Hagen Lawn & Landscaping, first in a part-time capacity and later in a full-time one. While Ingram's duties are a point of contention among the parties, both parties agree that she worked as an office manager and designer at Hagen's business. Ingram's initial duties were mainly clerical, but later evolved following some on-the-job and at-home training—she learned more about the plants used for landscaping and how to prepare computer-assisted designs. At some point in 2010, Ingram began to design projects, prepare bids, work on expenses, and had some involvement in hiring laborers, all subject to Hagen's final approval.

Ingram had no written contract of employment dictating her wages, and there are a number of disputes in this case concerning her pay (or lack thereof). While the parties have not specified what Ingram's salary was while she worked in a part-time capacity, she was to be paid $1750 per month when she became a full-time employee in March 2010, with an increase to $2000 per month in May 2010. From March 2010 to May 2012, there was no regular day that Ingram was paid, and Ingram claims that money Hagen deposited into a compensation account was hers to withdraw as her pay. According to Ingram, this irregular method of pay—along with disputed deductions from her pay—meant that she was paid under a minimum wage and under her agreed-upon wage on several occasions from 2010 to 2012. After May 2012, Hagen issued paychecks to Ingram, dated June 1, July 1, August 1, September 1, and September 26. Hagen says that those paychecks were advance pay for the following month, while Ingram claims that they were payments for the preceding month. This back-and-forth has led to a dispute about whether Ingram was even paid for her final two weeks with Hagen in 2012: Ingram says she received no paycheck for October 2012, while Hagen says the paychecks from September were tendered to cover October.

Ingram's hours and her time records are also points of contention. As to time, Ingram claims that she often worked overtime—she says that she put in excess time in August 2010 to get work done before the ground froze and that she worked twelve-hour days, seven days a week from July through October 2011 for other projects—while Hagen says that he did not pay her overtime because she did not work excess hours that he knew about. As to records, neither party kept consistent records of Ingram's time, and each foist the lack of records on the other, with Ingram claiming that it was Hagen's duty as employer to keep records and Hagen claiming that records were kept but that Ingram destroyed them her during her final time with him in October 2012.

Despite the apparent ambiguity in Ingram's pay, duties, and hours, Ingram's work relationship with Hagen evidently puttered along from December 2009 to 2012 without deal-breaking problems. The employment relationship soured in 2012, however, and the reason depends on whom you ask. Ingram claims that Hagen made sexual advances, inappropriately commented on Ingram's appearance, sent her explicit text messages, and invited her to go on shopping and business trips with him alone in mid-to-late 2012, culminating with Hagen improperly touching Ingram on October 16, 2012. Ingram opposed Hagen's advance, so Hagen fired her. For his part, Hagen claims that Ingram took too much time off, did not put enough effort into her work, and made unauthorized charges to Hagen's accounts, leading him to fire her in October 2012 and to report her actions to his insurance company and the State's Attorney. (Ingram says these actions were retaliation for her opposition to Hagen's advances.)

In 2014, Ingram filed a complaint against Hagen in this Court, alleging wage and hour, contract, harassment, and retaliation claims. Hagen responded with conversion, fraud, and breach of fiduciary duty counterclaims. Discovery has concluded and the parties have now filed cross motions for partial summary judgment.

### Discussion

■ On cross motions for summary judgment, the court should "take the motions one at a time" and then "construe all facts and draw all reasonable inferences in favor of the non-moving party." *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 746 (7th Cir.2015). After parsing the motions, summary judgment is ap-

propriate on one or all of the requests for relief if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir.2014). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the end of the day, judgment is inappropriate when "alternate inferences can be drawn from the available evidence." *Hines v. British Steel Corp.,* 907 F.2d 726, 728 (7th Cir.1990).

### A. Ingram's Motion for Partial Summary Judgment

Ingram's motion seeks judgment as to parts of her Fair Labor Standards Act and Illinois Minimum Wage Law claims. The Fair Labor Standards Act entitles an employee to a minimum wage and to overtime pay for hours worked in excess of forty per week, unless she falls into an exemption. *See* 29 U.S.C. §§ 206, 207, 213. The Illinois Minimum Wage Law provides for similar protections; so similar are the statutes that the analysis for the Fair Labor Standards Act claim usually applies with equal force to the state claim. *E.g., Urnikis–Negro v. Am. Family Prop. Servs.,* 616 F.3d 665, 672 n. 3 (7th Cir.2010); *Condo v. Sysco Corp.,* 1 F.3d 599, 601 n. 3 (7th Cir.1993). Throughout their briefs, both parties analyze their state and federal arguments under federal law and treat the federal analysis as dispositive across the board, so the Court will do the same.

■ Ingram's motion focuses on her status as "employee" and Hagen's status as "employer" under the Fair Labor Standards Act, so the Court will start there. On these points the statute is vague; the statute defines "employee" as "any individual employed by an employer" and "em-

ployer" as a person "acting directly or indirectly in the interest of an employer." 29 U.S.C. § 203. The definitions are so abstract as to require the courts to look to the "economic reality" of the working relationship to determine whether a plaintiff is an employee and a defendant is an employer. *Sec. of Labor, U.S. Dep't of Labor v. Lauritzen,* 835 F.2d 1529, 1534 (7th Cir. 1987). The statute is remedial, so within reason its definitions must be interpreted broadly and comprehensively. *Id.*

■ Whether Hagen is an "employer" turns on whether he had "supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation" of the Act. *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir. 1987). The question is mostly one of duty—a person is an "employer" if they had control over the wage and payment aspects of the business that impacted the violation at issue. *See Dole v. Simpson,* 784 F.Supp. 538, 545 (S.D.Ind.1991) (Tinder, J.) **(the "issue in FLSA cases is whether the individual had control over the alleged violation of the Act" or, put another way, had "a duty as a statutory employer not to violate the Act").** Persons who own a business and have operational control over significant aspects of the business's functions, especially compensation, typically qualify as "employers" under the Act. *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 966 (6th Cir. 1991); *Donovan v. Agnew,* 712 F.2d 1509, 1514 (1st Cir.1983). Ingram has pointed to facts demonstrating that Hagen owned the business, acted as her supervisor, and had the power to control her pay. Hagen does not dispute these facts—his response to Ingram's motion doesn't bother to respond to the point at all—and the facts Ingram has offered establish that Hagen is an employer. Judgment in her favor on this point is appropriate.

Ingram also argues that she is an "employee" under the Fair Labor Standards Act, as opposed to an independent contractor—the former is covered while the latter is not. Whether Ingram is an employee turns on whether she is "dependent upon the business to which [she] renders service." *Lauritzen,* 835 F.2d at 1534. Dependency is ascertained by examining the nature and degree of the employer's control as to the manner in which the work is to be performed, the alleged employee's opportunity for profit or loss depending upon his managerial skill, the alleged employee's investment in equipment or materials required for her task, whether the service requires a special skill, the degree of permanency of the relationship, and the extent to which the service rendered is an integral part of the alleged employer's business. *Id.*

The independent contractor question is fact intensive, and the record shows open questions about many of the facts that feed into the analysis. Chief among them are the facts that go to whether Hagen controlled Ingram. Control for independent contractor status is distinct from control for employer purposes—the former looks at whether the purported employer controlled the "manner or method" of the work, *Carrell v. Sunland Constr. Inc.,* 998 F.2d 330, 332 (5th Cir. 1993), while the latter looks at whether the purported employer bore responsibility in "whole or part for the alleged violation" based on his duties, *Riordan,* 831 F.2d at 694. The level of control that Hagen had over Ingram's schedule, work tasks, and other aspects of her duties is up in the air. Whether Ingram had specialized skills also involves disputed facts and close inferences to be drawn from those facts—Ingram was trained in large part by Hagen and came to the job seemingly with no specialized training, but there is some question as to whether she undertook her own personal training to learn the tools of the design trade. There are other disputes, too; it suffices to say that the disputed facts and the inferences to be drawn from those facts are close enough that summary judgment cannot be granted in Ingram's favor on the employee point. *Keller v. Miri Microsystems LLC,* 781 F.3d 799, 805 (6th Cir.2015); *Lauritzen,* 835 F.2d at 1542 (Easterbrook, J., concurring).

Ingram also asks for judgment as to her "claims" that Hagen failed to maintain records under the Fair Labor Standards Act. (Doc. 42 at 1.) The reference to "claims" is curious—Ingram doesn't plead any standalone claims for records violations in her complaint, and she couldn't even if she wanted to, as the Fair Labor Standards Act does not allow for a private cause of action for record issues. *Elwell v. Univ. Hosp. Home Care Servs.,* 276 F.3d 832, 843 (6th Cir.2002). Ingram's brief makes things clearer—she seems to be asking for judgment concerning her burden as to damages for her Fair Labor Standards Act claims. The damages burden a plaintiff has to shoulder depends on the existence of accurate and adequate time records: if those records exist, damages can be proven with them; if not, then an employee can "carr[y] out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). The burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

The parties seem to concede that no hours records exist but Hagen opposes

summary judgment on the applicability of *Mt. Clemens* nonetheless. He argues that Ingram shouldn't be able to prove up damages under the more relaxed side of *Mt. Clemens* because Hagen "kept proper time records" but Ingram allegedly destroyed them before bidding Hagen adieu. (Doc. 50 at 2.) Hagen's problem is that *Mt. Clemens* cares little about fault: an employer's duty to maintain records is nondelegable, and *Mt. Clemens* sets up a framework that a plaintiff can use to prove damages when more crystallized evidence is unavailable or inaccurate. *See Anderson,* 328 U.S. at 687, 66 S.Ct. 1187; *see also Kuebel v. Black & Decker, Inc.,* 643 F.3d 352, 362–63 (2d Cir.2011). It is important to remember what is not before the Court—Hagen has not moved for exclusion of evidence as a sanction for spoliation, but instead has only argued that Ingram's alleged bad acts present a question of fact that precludes a ruling on the use of the *Mt. Clemens* damages framework at trial. Fault issues don't have much to do with that point. That the records are gone is undisputed, and their loss means that *Mt. Clemens* is applicable to the damages aspect of this case. Hagen is free to debunk the softer evidence that Ingram might offer to back up her damages or to attack whether he is liable in general.

■ With those matters out of the way, the only question left from Ingram's motion is her request for judgment as to Fair Labor Standards Act "liability only." (Doc. 43 at 16.) Liability will exist if Ingram qualifies as an employee under the Act, if she does not fall into an exemption to the statute, and if she was not properly compensated for work for which her employer was aware. *Kellar v. Summit Seating, Inc.,* 664 F.3d 169, 173, 178 (7th Cir. 2011). Ingram's request for judgment as to liability is confusing to say the least, as she seems to concede that she still needs to prove that she worked overtime hours and that she was not paid a minimum wage. Ingram has pointed to some evidence in the record that she worked some amount of uncompensated overtime and was not paid a minimum wage on some occasions, and the factfinder is free to accept or reject that evidence. However, there is evidence in the record to dispute these points, meaning that summary judgment in favor of Ingram on liability is not appropriate.[1]

### B. *Hagen's Motion for Summary Judgment*

■ With Ingram's motion out of the way, the Court can move on to Hagen's requests for summary judgment. He first seeks judgment as to Ingram's overtime claim under the Fair Labor Standards Act, arguing that she is exempt because she was employed in a bona fide administrative capacity during her entire time as Hagen's office manager. *See* 29 U.S.C. § 213(a)(1). For this exemption to apply, an employee

---

1. Ingram also seeks judgment concerning Ingram's status as an employee, Hagen's status as an employer, and use of the *Mt. Clemens* framework for her Illinois Minimum Wage Law claims. The Illinois statute is an analogue to the Fair Labor Standards Act and includes nearly identical language concerning the employer, employee, and records questions. *See* 820 ILL. REV. STAT. 105/3; 820 ILL. REV. STAT. 105/8. The similarities between the statutes lead federal and state courts to use federal law to analyze equivalent state law points. *E.g., Urnikis–Negro,* 616 F.3d at 672 n. 3; *Callahan v. City of Chicago,* 78 F.Supp.3d 791, 821 (N.D.Ill.2015); *Res. Home Health Servs. v. Shannon,* 368 Ill.Dec. 275, 983 N.E.2d 1079, 1086 (Ill.App.Ct.2013). As the Court mentioned above, both parties assume throughout their briefs that the federal analysis resolves the state questions, so the Court will do the same. Accordingly, the Court finds that Hagen is an employer under the Illinois statute, that Ingram can use the *Mt. Clemens* framework for Illinois Minimum Wage Law damages, and that issues of fact remain as to the employee point.

must be compensated at a rate of not less than $455 per week, her primary duty must be the performance of office or non-manual work directly related to the management or business operations of the employer or the employer's customers, and her primary duty must include the exercise of discretion and independent judgment. *Blanchar v. Std. Ins. Co.*, 736 F.3d 753, 756 (7th Cir.2013). The exemption determination "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir.2012).

As Ingram points out in her response to Hagen's motion, there are numerous open fact questions concerning Ingram's job duties, all militating against summary judgment on the exemption question. For one, the exemption requires that Ingram's "primary" duties be administrative, with "primary" generally meaning that the "major part" or "over 50 percent of the employee's time" was spent on administrative tasks. *Kennedy v. Commw. Edison Co.*, 410 F.3d 365, 373 (7th Cir.2005). The Court says "generally" because time is not the sole criteria for whether an employee's duties are administrative; in those instances where an employee cites to time spent on a number of duties that seem clerical, courts must also examine "the relative importance of those duties to the employer," as "collateral tasks" do not count for much in the calculus. *Demos v. City of Indianapolis*, 302 F.3d 698, 705 (7th Cir.2002). The problem here is that Hagen has not engaged with this standard in his motion for judgment, and there are a number of disputed facts concerning Ingram's duties and the time spent on those duties. Those points preclude summary judgment on the exemption point.

Other fact disputes also swing against entry of summary judgment on the exemption issue. An employee is exempt under the administrative provision only if she is paid $455 or more per week, and Ingram points to testimony showing an open question as to whether she was paid that amount during her entire time with Hagen. Once more, the exemption applies only when the employee's duties include the "exercise of discretion and independent judgment with respect to matters of significance." *Schaefer–LaRose*, 679 F.3d at 577. An administrative assistant to a business owner generally meets the duties-related requirements for the administrative exemption if the assistant, "without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance." *McKee v. CBF Corp.*, 299 Fed.Appx. 426, 429 (5th Cir.2008) (*quoting* 29 C.F.R. § 541.203). Ingram has pointed to testimony showing that there is a factual dispute as to the level of authority she had as Hagen's office manager, and for that reason, too, summary judgment is improper.

Hagen also seeks summary judgment as to damages for the Fair Labor Standards Act overtime claim, arguing that Ingram hasn't cobbled together enough to allow a finder of fact to issue a damages award. He is right that part of Ingram's burden is to "quantify damages" by proving up the amount of overtime hours she worked for which she was not paid. *Brown v. Family Dollar Stores of Indiana, LP*, 534 F.3d 593, 595 (7th Cir.2008). Because hours-related records are absent here, *Mt. Clemens* applies, meaning that proof of damages is relaxed—damages can be "reconstructed from memory," "inferred from the particulars of the jobs," or "estimated in other ways." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013). That said, the fact that the standard is relaxed does not absolve Ingram from coming forth with some evidence at summary judgment that demonstrates her ability to quantify damages—she must still offer some evidence that a finder of fact

could use "to establish the amount of unreported time." *Id.* As a number of circuits have recognized, litigants who rely on *Mt. Clemens* cannot survive summary judgment without offering some proof that would allow the finder of fact to tee up an award. *E.g., Jackson v. Corr. Corp. of Am.,* 606 Fed.Appx. 945, 952–53 (11th Cir. 2015); *Holaway v. Stratasys., Inc.,* 771 F.3d 1057, 1059 (8th Cir.2014); *Lee v. Vance Executive Prot., Inc.,* 7 Fed.Appx. 160, 166 (4th Cir.2001).

 Hagen argues that Ingram has offered little to no evidence on damages, and he is right to complain—Ingram should have done more to come up with a tidier presentation of her overtime damages in response to Hagen's motion for summary judgment. In her response to Hagen's motion for summary judgment, Ingram faults Hagen for not engaging with the *Mt. Clemens* framework or asking questions in discovery about Ingram's recollection, but the initial burden under *Mt. Clemens* falls on Ingram, not Hagen. Her response to Hagen's motion for summary judgment offers little in the way of an estimate of her unpaid hours, and her claim that she will present evidence at trial to allow for a reasonable award suggests that she is blithely unaware of the fact that summary judgment is the "put up or shut up" moment in a lawsuit. *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir.2010). Still, the courts to apply *Mt. Clemens* have recognized that the burden of proof for plaintiffs without records is light, and summary judgment is generally improper when litigants subject to *Mt. Clemens* have some evidence based on their own recollection to show a relatively discrete amount of overtime, even when they lack a tabulation. *See Brown,* 534 F.3d at 597–98 (**inability**

to "**identify with specificity the hours or even days for which [the employee] worked**" not fatal at summary judgment); *see also Kuebel,* 643 F.3d at 364 (**evidence that laid out an average of one to five hours of uncompensated overtime over a specific period of time was enough to get past summary judgment even if "not precise"**). While Ingram would have made the Court's job far easier by laying out the evidence she has to support a damages calculation, there is some evidence in the record on that point, including Ingram's testimony that she worked 12–hour, seven-day-a-week months at several points in 2011. That is enough, if barely, to stave off judgment for Hagen.

 Moving past the Fair Labor Standards Act overtime claim, Hagen seeks summary judgment on Ingram's Fair Labor Standards Act minimum wage claim. This point, like many others in this case, involves disputed issues of fact, and thus is not grist for summary judgment. Ingram has pointed to evidence that, if believed, would suggest that she was not paid a minimum wage in June and July 2011, in January and February 2012, and in October 2012, while Hagen claims that he paid Ingram at a rate at or above the minimum wage during her entire tenure with him and that the fluctuations in pay in those months were due to reductions in hours or recouped money that Ingram improperly spent. Who believes what—especially given the confusing method that Hagen used to pay Ingram and the outstanding questions as to when Ingram worked or did not work—will be a matter for the finder of fact.[2]

 With the overtime and minimum wage claims out of the way, the Court is

---

**2.** Hagen also seeks summary judgment as to Ingram's minimum wage and overtime claims under the Illinois Minimum Wage Law. As the Court said above, the Illinois Minimum Wage

Law employs similar language as the Fair Labor Standards Act, and for that reason courts often look to federal law to interpret the state question. *E.g., Urnikis–Negro,* 616

left only with Hagen's motion for summary judgment as to Ingram's breach of contract and quasi-contract claims. Hagen wants judgment as a matter of law as to the contract claim on the grounds that the essential terms of any contract here were not clearly laid out—the parties, according to Hagen, did not lock down vacation time, hours, or other terms. To be sure, Illinois law requires that critical contractual terms be specified prior to the entry of a contract, especially where oral employment contracts are at issue. *McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 223 Ill. Dec. 911, 680 N.E.2d 1347, 1349 (1997); *Academy Chicago Publishers v. Cheever*, 144 Ill.2d 24, 161 Ill.Dec. 335, 578 N.E.2d 981, 983 (1991). But Ingram's claim is for breach of Hagen's promise to pay Ingram a portion of the $2000 amount he agreed to pay her for the first half of October 2012, and Hagen's admission that he agreed to pay her $2000 per month renders his motion for judgment borderline frivolous. The motion must be denied.

Hagen's motions for summary judgment as to the unjust enrichment and quantum meruit claims also fail, as Hagen's arguments are entirely undeveloped. For these two claims, Hagen merely argues that there is no claim because Ingram was paid an amount of money for her services during her months of employment with him, and he does not direct the Court to a case stating that payment of some amount alone precludes a claim for unjust enrichment or quantum meruit. The Court will not do his work for him—it is "not the province of the courts to complete litigants' thoughts for them." *White Eagle Coop. Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir.2009).

F.3d at 672 n. 3; *Condo*, 1 F.3d at 601 n. 3. Hagen cites to federal law for his state law points and claims that the same standards apply to both, so the Court's resolution of his Fair Labor Standards Act arguments resolve

## *Disposition*

For the reasons stated above, Ingram's motion for partial summary judgment (Doc. 42) is **GRANTED IN PART** and **DENIED IN PART.** It is **GRANTED** as to Hagen's status as an employer under the Fair Labor Standards Act and the Illinois Minimum Wage Law; it is **DENIED** as to Ingram's status as an employee under the Fair Labor Standards Act and the Illinois Minimum Wage Law; it is **GRANTED** as to the applicability of the *Mt. Clemens* framework for Fair Labor Standards Act and Illinois Minimum Wage Law damages; and it is **DENIED** as to Fair Labor Standards Act liability. Hagen's motion for summary judgment (Doc. 44) is **DENIED** in the entirety.

**IT IS SO ORDERED.**

the same questions under the Illinois Minimum Wage Law. Accordingly, his motion for summary judgment as to Ingram's Illinois Minimum Wage Law claims must be denied due to disputed facts.